IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| 2002 JBO Trust No. 1, | * | |
| John Brewster Ohle, III, | * | Civil Action No. |
| and Dumaine Group LLC | * | |
| *Plaintiffs* | * | Section "     " |
| | * | |
| v. | * | Mag _____ |
| | * | |
| Royal Bank of Canada, RBC Dain Rauscher, | * | |
| John Kruse, Mark Love, Montgomery Global | * | |
| Advisors V, L.L.C. | * | |
| and Roger O. Groh | * | |
| *Defendants* | * | |

**************************************************************************

## COMPLAINT

Plaintiffs 2002 JBO Trust No. 1 ("JBO Trust"), John Brewster Ohle, III ("Ohle") and

Dumaine Group LLC ("Dumaine") (collectively, "Plaintiffs") bring this action against

Defendants Royal Bank of Canada ("RBC"), RBC Dain Rauscher ("Dain Rauscher"), John Kruse

("Kruse"), Mark Love ("Love"), (sometimes, RBC, Dain Rauscher, Kruse and Love are referred

to as the "RBC Defendants"), Montgomery Global Advisors V, L.L.C. ("Montgomery") and

Roger O. Groh ("Groh") (sometimes, Montgomery Global and Groh are referred to as the

"Montgomery Defendants") (all defendants are sometimes collectively referred to as the

"Defendants"), seeking damages for claims arising out of the causes of actions more fully

described herein, and state:

Nature of the Lawsuit

1. Plaintiffs bring this civil complaint arising from Defendants' violation of the Racketeer

Influenced and Corrupt Organizations statute, 18 U.S.C. 1961-1968 et seq. ("RICO"), or,

alternatively, violations of the federal and/or Louisiana securities laws, civil fraud, civil

conspiracy, unjust enrichment, violations of the Louisiana Unfair Trade Practices Act and The

Illinois Consumer Fraud and Deceptive Business Practices Act, Breach of Contract and Breach of

Fiduciary Duty.

Jurisdictional Background

    2.  Plaintiff 2002 JBO Trust No. 1 is a Louisiana grantor trust, domiciled in Orleans

Parish.

    3.  Plaintiff John Brewster Ohle, III is an Illinois resident and grantor of the JBO Trust.

    4.  Plaintiff Dumaine Group LLC is a foreign limited liability company with its last

principal place of business located in Cook County, Illinois.

    5.  Defendant Royal Bank of Canada is a foreign corporation with offices in New York,

New York.

    6.  Defendant RBC Dain Rauscher is a foreign corporation, engaged in stock and/or

equity investment advisory services, that RBC purchased in approximately 2000.

    7.  Upon information and belief, Defendant John Kruse is a New Jersey resident who, in

2002, was the manager of RBC's foreign security sales desk in its New York office.  Kruse was a

foreign exchange option and derivative specialist for RBC.

    8.  Upon information and belief, Defendant Mark Love is an Arizona resident who, in

2002, was an employee of Dain Rauscher.

    9.  Upon information and belief, Defendant Montgomery Global Advisors V L.L.C. is a

foreign corporation with the last known address at 44 Montgomery Street, Suite 3705, San

Francisco, California 94104.

    10.  Upon information and belief, Defendant Roger O. Groh is a California resident, who

in 2002, was a client of RBC and owner of Montgomery Global Advisors and Groh Asset

Management, with last known addresses at 44 Montgomery Street, Suite 3705, San Francisco,

California 94104 and/or P.O. Box 942, Sausalito, California 94965.

11. This Court possesses personal jurisdiction over the Defendants because the Defendants conducted or have conducted business in Louisiana and because the matters alleged herein against the Defendants arose from conduct engaged in and damage occurring in Louisiana.

12. This Court possesses subject matter jurisdiction over this matter pursuant to RICO and complete diversity between the parties with an amount in controversy in excess of $75,000.

Factual Background

13. In February 2002, Dumaine was formed by Ohle, Donald Wilson, Paul Ferguson and John Manella.

14. Dumaine sought to introduce best-of-class products to wealthy individuals and family groups. In addition to its founding members, Dumaine initially employed five other employees, including Vicky Little ("Little").

15. Through Little's relationship with Jay Gordon of Greenberg Traurig, Dumaine and its members and employees, including Ohle, were referred to John Napoli at Seyfarth Shaw, a New York law firm, who, in turn, introduced them to RBC in connection with a tax advantaged basket of forward contracts (the "Forward Contracts") and options (the "Options).

16. Kruse of RBC described the tax advantaged investment that RBC had designed whereby a client makes a relatively small investment in a portfolio of the Forward Contracts and the Options structured to exploit the relative price movement of two or more currencies.

17. The primary drivers of the portfolio were the values of the Danish kroner and the euro, both relative to the U.S. Dollar.

18. In order to mitigate risk and to benefit from relatively small (decimal point) exchange rate movements, RBC clients' strategy was to include investment in highly leveraged, and

hedged, positions so that large notional amounts could be invested without significant additional financial exposure.

19. Compared to an outright position in a foreign currency, the Forward Contracts and Options would potentially produce significant profits from incremental exchange rate movements and incremental movements in interest rates while reducing the risk of catastrophic losses from such rate movements.

20. In addition, the Forward Contracts and Options purchased over-the-counter would provide tighter bid-ask spreads compared to foreign currency transactions on regulated futures exchanges.

21. The decision to invest in any given arbitrage position typically was based on an expectation of profit from short-term movements in the relative currencies taking into account the implicit interest components inherent in the instruments.

22. This set of investments will be referred to in this Complaint as "the RBC Transaction".

23. RBC through Kruse provided investment materials created by RBC and legal memorandums written by Seyfarth & Shaw, L.L.P. ("Seyfarth Shaw") that demonstrated that the RBC Transaction would result in a proper tax deduction while also allowing a sizeable return on the invested money.

24. The RBC Transaction was marketed to many professionals throughout the country including Jenkens & Gilchrist, Joe Garza, Ed Sedacca and others.

25. Dain Rauscher, a subsidiary of RBC, was involved from the inception of the RBC Transaction in its design and marketing through its employee, Mark Love.

26.  Both Kruse and Love made representations to JBO Trust, Ohle and Dumaine regarding the economic profit potential, the compliance of the RBC Transaction with the tax at-risk rules and the suitability of the counterparty, Montgomery Defendants, to the RBC Transaction.

27.  Kruse also provided a tax memorandum from Seyfarth Shaw concluding that the RBC Transaction was not a tax shelter and would result in properly deductible tax losses despite limited economic risk.

28.  In the fourth quarter of 2002, Dumaine referred clients interested in the RBC Transaction to Kruse.

29.  Ohle also introduced three non-Dumaine clients, JBO Trust, Ken Brown and Douglas Steger, to the RBC Transaction.

30.  Kruse, in turn, introduced Groh and Montgomery Global as counterparties to the RBC transaction to JBO Trust, Brown, Steger and Dumaine clients.

31.  JBO Trust was established in 2002 for the benefit of Ohle's children.  His father, John B. Ohle, II, ("Bruce Ohle") was trustee of the trust at the time of the RBC Transaction.  As a grantor trust, all income or losses from JBO Trust were reported on Ohle's personal income tax returns in 2002.

32.  All representations regarding the RBC Transaction to Ohle and/or JBO Trust leading up to the investment came from RBC through Kruse.

33.  In December 2002, JBO Trust entered into the RBC Transaction as did Brown, Steger and a number of Dumaine clients and other clients referred to Dumaine.

34.  Upon information and belief, the RBC Defendants executed 60-90 RBC Transactions with the Montgomery Defendants as counterparty to the Forward Contracts and Options.

35.  JBO Trust reported the tax losses from the RBC Transaction on its 2002 income tax return which then flowed through to Ohle's 2002 personal income tax returns.

36.  On April 15, 2003, the Internal Revenue Service ("IRS") issued Information Disclosure Requests ("IDR") to Dumaine regarding its activities with the RBC Transaction.

37.  Dumaine hired Winston & Strawn to comply with the IDR and the resulting tax shelter promoter audit.

38.  After more than a year and over $500,000 of legal fees, Dumaine was put out of business by the RBC Transaction and the resulting tax shelter promoter penalty despite the assurances and representations of the Defendants.

39.  In December 2003, the IRS issued Internal Revenue Notice 2003-81, entitled "Tax Avoidance Using Offsetting Foreign Currency Option Contracts."  This Notice provided: "The Internal Revenue Service and the Treasury Department are aware of a type of transaction, described below, in which a taxpayer claims a loss upon the assignment of a section 1256 contract to a charity but fails to report the recognition of gain when the taxpayer's obligation under an offsetting non-section 1256 contract terminates.  This notice alerts taxpayers and their representatives that these transactions are tax avoidance transactions . . . "

40.  Internal Revenue Notice 2003-81 required the disclosure of the RBC Transaction to the IRS.

41.  Ohle timely disclosed JBO Trust's involvement in the RBC Transaction in full compliance with Internal Revenue Notice 2003-81.

42.  The Montgomery Defendants, meanwhile, ignored summonses relating to these transactions, indicating their knowledge that their fraud was being exposed.  See U.S.A. v. Montgomery Global Advisors V LLC, 2006 WL 950102 (N.D. Cal. 2006).

43. Plaintiffs were unaware of any fraud with the IRS opening a civil tax audit on Ohle as a result of his reporting the losses from the RBC Transaction.

44. However, not until November 14, 2008, was Ohle made aware that his involvement in the RBC Transaction was subject to a criminal complaint.

45. In May 2010, Ohle was tried in U.S. federal court on three counts - two of which related to the fraudulent deductions claimed on the RBC Transaction (the "Ohle Prosecution").

46. But it was not until the testimony of RBC's Kruse and Dain Rauscher's Love that the Plaintiffs could or should have known of the fraud.

47. On May 26, 2010, Love, pursuant to a non-prosecution agreement, and Kruse, pursuant to an immunity agreement, testified in Ohle Prosecution.

48. On May 26, 2010, Plaintiffs became aware of the fraudulent scheme between RBC, Dain Rauscher and Montgomery Global to illicit investments in a fraudulent tax shelter and provide illegal kickbacks undisclosed to RBC clients.

49. On May 26, 2010, Plaintiffs further learned that the RBC Transaction was a sham transaction itself whereby the underlying investment contracts were fraudulent.

50. In regards to the fraudulent scheme, Love testified that he arranged a scheme for the purpose of tax evasion between himself as an employee of Dain Rauscher, Kruse as an employee of RBC, Ed Sedacca, a Texas tax attorney, and Groh, a client of RBC.

51. Kruse testified that the Forward Contracts and Options "were not allowed to be pulled apart to expose the taxpayers to risk. Montgomery Global or anyone who would have been a counterparty to the transaction would not allow it."

52. The trade confirmations on the Forward Contracts and Options executed in December 2002 by JBO Trust, Brown, Steger and Dumaine clients specifically state that each

trade was separate and independent from the others.

53. Further, the Montgomery Defendants provided a fraudulent representation to Jay Gordon at Greenberg Traurig that each Forward Contract and/or Option was separate and independent from the others.

54. This fraudulent agreement between RBC and Montgomery Global to "not allow the group of transactions to be separated" and not treat them as separate investments in accordance with the contracts themselves and Montgomery's representations, resulted in Ohle's 2010 conviction for conspiracy to defraud the United States (Count 1) and tax fraud (Count 3).

55. Kruse also falsely testified that Ohle and other clients were aware of this secret agreement with the Montgomery Defendants.

56. On May 26, 2010, Love and Kruse also testified that they had a secret agreement with the Montgomery Defendants to split all invested amounts on the RBC Transactions equally between Love, Kruse and Groh.

57. Neither Ohle, JBO Trust or any Dumaine member or employee was ever aware of these secret agreements between RBC Defendants and the Montgomery Global Defendants.

58. On January 14, 2011, Judge Rakoff ordered restitution of $2,983,903 to the United States in conjunction with the fraudulent RBC Transaction.

FIRST CAUSE OF ACTION:

Violations of RICO

59. The allegations contained in paragraph 1 through 57 of this Complaint are incorporated herein by reference.

60. Each Plaintiff is a person within the meaning of 18 U.S.C. 1964(c).

The Enterprise

61. At all times hereto Plaintiffs and each member of the Enterprise was a person within the meaning of 18 U.S.C. 1961(3).

62. An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity."

63. The enterprise at issue in this case, for purposes of 18 U.S.C. 1961(3), 1962(c) and 1962(d), is an association-in-fact of all Defendants and unnamed co-conspirators - "Members of the Enterprise" - collectively referred to herein as "the Enterprise." The wrongdoers that were part of the association-in-fact Enterprise include the Defendants and unnamed co-conspirators.

64. While the Defendants participated in the Enterprise and were a part of it, the Defendants also had an existence separate and distinct from the Enterprise.

65. Defendants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

66. Defendants' control and participation in the Enterprise were necessary for the successful operation of the Defendant's scheme.

67. The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

68. Defendants and all other members of the Enterprise shared costs, information, resources, and the fruits of its predicate acts. The association-in-fact Enterprise, composed of the Defendants and other Members of the Enterprise, was a formal, ongoing relationship which functioned as a continuing unit, pursuing a course of conduct as set forth above (i.e., to fraudulently obtain fees from tax shelter transactions including fraudulent representations) with a common or shared purpose (i.e., to financially and otherwise benefit the Defendants), and

continuity of structure and personnel (including executives, agents, partners, associates and support staff).

69.   Defendants and those employed by and/or associated with the Enterprise, which engaged in interstate commerce, have conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. 1962(c) to fraudulently claim monetary restitution in connection with the Ohle Prosecution.

70.   Defendants also violated 18 U.S.C. 1962(d), in as much as it knowingly, intentionally, and unlawfully, aided and abetted the Enterprise and conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprise, through the pattern of racketeering activity described herein.

The Scheme

71.   As set forth hereinabove, for a substantial period of time, Members of the Enterprise knowingly, intentionally and directly participated in, or aided and abetted, counseled, commanded, induced, procured or caused and conspired in the pursuit of fraudulently marketing various tax shelter product to obtain fees and making fraudulent representations in connection with the RBC Transaction.

72.   The particulars of the scheme as set forth above were achieve by means of false or fraudulent representations or promises and through the use of the mails and/or wires.

Predicate Acts

73.   With respect to the activities alleged herein, the Enterprise acted at all times with malice toward the Plaintiffs, with the intent to engage in the conduct complained of related to the RBC Transaction for the monetary benefit of Defendants and other Members of the Enterprise. Such conduct was done with actionable wantonness and reckless disregard for the rights of

Plaintiffs.  The predicate acts were acts of deception, which furthered the goal of fraudulently earning fees on the RBC Transactions.

74.  With respect to the activities alleged herein, the Enterprise sought to aid and abet and actually did aid and abet a transaction to violate 18 U.S.C.  1962(c).  Each member of the Enterprise, including the Defendants, agreed to interfere with, obstruct, delay or affect interstate commerce by fraudulently earning fees on the RBC Transactions.

75.  With respect to the overt acts and activities alleged herein, each Member of the Enterprise conspired with each other co-conspirator or entity to violate 18 U.S.C.  1962(a),(b) and (c), all in violation of 18 U.S.C.  1962(d).

76.  In violation of  1962(c), each Member of the Enterprise agreed and conspired with each other Member to acquire or maintain property interests to which the Enterprise was not entitled through racketeering activity which included making false representations in connection with the RBC Transactions.

77.  The Enterprise and its individual Members exceeded any legitimate role of investment advisors and/or counterparty by designing, creating, engineering, implementing, marketing, promoting and/or selling between 60-90 of these RBC Transactions in an attempt to conspire to obtain money in the form of fees, commissions, kickbacks and/or bribes, knowing that the underlying investment contracts were fraudulent.

78.  The Enterprise's schemes have resulted in severe financial, business, reputational and personal losses to the Plaintiffs.

79.  Moreover, as a result of the Enterprise's wire fraud and mail fraud violations, Plaintiffs have suffered extensive monetary damages consisting of unexpected tax liabilities, fees and commissions paid to the Enterprise, enormous legal fees associated with the tax shelter

promoter audit of Dumaine and the criminal charges associated with the Enterprise's activities. Further, Ohle has suffered further damages in the form $2,983,903 restitution to the United States, past, present and future loss of earnings, reputation damage, embarrassment and humiliation, incarceration, severe mental and emotional distress and other related damages related thereto due to the Enterprise's activities and fraudulent actions.

80.  The Enterprise's documents and communications associated with the schemes at issue related to the marketing and investment contracts related to the RBC Transactions contained false and/or misleading representations.

81.  These misrepresentations constitute "false or fraudulent pretenses, representations or promises" within the meaning of the mail fraud (18 U.S.C. 1341) and wire fraud (18 U.S.C. 1343) provisions.

82.  All of the Members of the Enterprise actively participated in this elaborate scheme to obtain money from Plaintiffs, including the Defendants named herein and others who are not named as Defendants to this matter.

83.  The numerous predicate acts of mail and wire fraud described herein related to the Defendants' fraudulent marketing of this tax shelter product and the Defendants' fraudulent investment contracts associated with the RBC Transaction are part of separate fraudulent transactions by the Enterprise designed to defraud the Plaintiffs of money and property interests under false pretenses.

84.  As the victims of this unlawful pattern of illegal behavior, Plaintiffs have continued to suffer losses.

85.  In carrying out the overt acts and fraudulent transactions described herein, the Enterprise engaged in conduct in violation of various federal and state laws and regulations,

including, but not limited to, 18 U.S.C. 1341, 1343, 1346 and 1961 et seq.

86. 18 U.S.C. 1961(1) provides that "racketeering activity means any act indictable under any of the following provisions of Title 18, United States Code: 1341 (relating to mail fraud), 1343 (relating to wire fraud), and 1346 (relating to a scheme or artifice to defraud). Violations of 18 U.S.C. Sections 1341 and 1343

87. For the purpose of executing and/or attempting to execute the RBC Transaction to defraud and obtain money by means of false pretenses, representations or promises, the Enterprise, in violation of 18 U.S.C. 1341, placed in post offices and/or in authorized repositories for mail, matter and things to be sent or delivered by the Postal Service and received matter and things therefrom including, but not limited to, marketing materials, tax memorandums, instructions, investment contracts, trading confirmations, correspondence, letters and other items related to the marketing of the RBC Transaction and the related fraudulent investment contracts.

88. For the purpose of executing and/or attempting to execute the RBC Transaction to defraud and obtain money by means of false pretenses, representations or promises, the Enterprise, in violation of 18 U.S.C. 1343, transmitted and received by wire, matter and things therefrom, including, but not limited to, marketing materials, tax memorandums, instructions, investment contracts, trading confirmations, correspondence, letters and other items related to the marketing of the RBC Transaction and the related fraudulent investment contracts.

89. The Enterprise's use of the mails and/or wires includes private and public components.

90. The Members of the Enterprise utilized the U.S. Mail and wire to communicate among themselves, as well as with their unnamed co-conspirators. The Defendants and/or its

representatives lived and/or worked in the States of New York, Arizona and California and participated in this scheme from there, while many clients lived in Louisiana and elsewhere. In order to carry out and implement its scheme, the Enterprise necessarily had to communicate using the interstate mails and wires.

91.  In those matters and things sent or delivered by the Postal Service, by wire and through other interstate electronic media, the Enterprise falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiffs and Dumaine clients in violation of 18 U.S.C. 1341 and 1343.

92.  The Enterprise intentionally and knowingly made these misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs and Dumaine clients for the purpose of deceiving them and thereby obtaining financial gain.

93.  The Enterprise either knew, should have known, or recklessly disregard that the misrepresentations and omissions described herein were material.

94.  Plaintiffs and Dumaine's clients justifiably relied on the misrepresentations and omissions.

95.  Plaintiffs have therefore been injured in its business, property, reputation and/or person by the Enterprise's overt acts and racketeering activities.

Pattern of Racketeering Activity

96.  The violations set forth constitute "racketeering activities" or "predicate acts" within the meaning of 18 U.S.C. 1961(1).

97.  The Enterprise has engaged in a "pattern of racketeering activity," as defined in 1961 of RICO, by committing and/or conspiring to commit or aiding and abetting a transaction with at least two such acts of racketeering activity, as described specifically herein concerning the

marketing of the RBC Transaction and the related fraudulent investment contracts, within the

past ten years.  Each act of racketeering activity was related, had similar purposes, involved the

same or similar participants and methods of commission, and had similar results on the Plaintiffs

herein.

98.  The Enterprise's racketeering activities or predicate acts are related and also amount

to a continuous criminal activity.

99.  These predicate acts are related in the sense that they have the same purpose (to carry

out the scheme described herein); result (to obtain money); victims (such as the Plaintiffs herein

and other Dumaine clients); method of commission (the scheme described herein); and are

otherwise interrelated by distinguishing characteristics and are not isolated events, because they

were carried out for the same purposes.

100.  The predicate acts were committed in the same manner, and they constituted the

Enterprise's "normal" way of doing business with regard to pursuing these business transactions.

101.  The related predicates amount to a continued criminal activity because they

extended over a substantial period of time.

102.  The Enterprise's course of action entails a span of at least three years, during which

the Defendants designed, marketed, implemented and covered up their fraud, including the

commission of numerous, related predicated acts, as set forth specifically herein concerning the

fraudulent marketing of the RBC Transaction and the related fraudulent investment contracts, as

part of their continuing scheme.

103.  Also, the predicate acts are closely intertwined as far as actors, goals, nature,

functioning and structure of the operations described herein in the persecution of Plaintiffs.

104. The multiple acts and the continuity and relatedness of racketeering activity committed and/or conspired to or aided and abetted by Defendants and unnamed co-conspirators, as described herein, were related to each other, amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity" with the meaning of 18 U.S.C. 1961(5).

105. As a result of the Enterprise's conduct set forth herein, Plaintiffs have suffered injuries in the form of financial, business, reputational and personal losses. Moreover, as a result of the Enterprise's wire fraud, mail fraud and general fraud violations, Plaintiffs have suffered extensive monetary damages consisting of unexpected tax liabilities, fees and commissions paid to the Enterprise, and enormous legal fees associated with Dumaine's tax shelter promoter audit and civil lawsuits as well as Ohle's criminal charges associated with the Enterprise's activities. Further, Ohle has suffered further damages in the form of $2,983,903 restitution to the United States, past, present and future loss of earnings, reputation damages, embarrassment and humiliation, incarceration, severe mental and emotional distress and other damages recoverable under federal or state law related to the Enterprise's activities and fraudulent actions.

106. As a proximate cause of the foregoing, Plaintiffs have been injured in an actual amount to be proven at trial, and should be awarded treble damages in accordance with the evidence, plus attorneys' fees and costs.

SECOND CAUSE OF ACTION:

Violations of Federal and/or Louisiana Securities Laws

107. The allegations contained in paragraphs 1 through 105 of this Complaint are incorporated herein by reference.

108.  During relevant times, each of the Defendants participated in and carried out a plan, scheme and course of conduct which was intended to and did deceive Plaintiffs.

109.  Defendants (i) employed devices, schemes and artifices to defraud; (ii) made untrue statements of material facts and/or omitted to state material facts necessary to make the statements not misleading; (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Plaintiffs in an effort to enrich themselves by promoting the fraudulent RBC Transaction in violation of federal and Louisiana securities laws.

110.  As a result of the Defendants' conduct set forth herein, Plaintiffs have suffered injuries in the form of financial, business, reputational and personal losses.  Moreover, as a result of the Defendants' securities fraud, Plaintiffs have suffered extensive monetary damages consisting of unexpected tax liabilities, fees and commissions paid to the Defendants, and enormous legal fees associated with Dumaine's tax shelter promoter audit and civil lawsuits as well as Ohle's criminal charges associated with the Defendants' activities.  Further, Ohle has suffered further damages in the form of $2,983,903 restitution to the United States, past, present and future loss of earnings, reputation damages, embarrassment and humiliation, incarceration, severe mental and emotional distress and other damages recoverable under federal or state law related to the Defendants' securities fraud.

111.  As a proximate cause of the foregoing, Plaintiffs have been injured in the actual amount to be proven at trial, and should be awarded damages in accordance with the evidence including attorneys' fees and costs and punitive and/or exemplary damages where applicable due to Defendants' securities fraud.

THIRD CAUSE OF ACTION:

Civil Fraud

112.  The allegations contained in paragraphs 1 through 110 of this Complaint are incorporated by reference.

113.  The Enterprise made false and misleading statements in violation of the law as set forth herein.

114.  The members of the Enterprise and/or their representatives or agents made and/or were responsible for knowingly making false misrepresentations to the Plaintiffs and Dumaine's clients in order to induce the clients to pay fees in the fraudulent RBC Transaction.

115.  These knowingly false representations, included, but were not necessarily limited to, the representations in the RBC marketing material and the investment contracts are false.

116.  The Enterprise submitted the false marketing materials and investment contracts through Kruse, Love and Groh in order to fraudulently seek from the Plaintiffs and Dumaine's clients fees in the fraudulent RBC Transaction.

117.  The above intentional omission of material facts and/or affirmative representations made by the Enterprise and its unnamed co-conspirators were false when made and the Enterprise knew or should have known these representations to be false when made with the intention that the Plaintiffs and Dumaine's clients rely on those representations.

118.  In addition, the above affirmative misrepresentations and/or intentional omissions of material facts were made knowingly by the Enterprise with the intent to induce the Plaintiffs and Dumaine's clients to pay fees in the fraudulent RBC Transaction.

119.  In reasonable reliance on the Enterprise's false affirmative representations and intentional omissions of materials facts regarding the transactions at issue, the Plaintiffs and

Dumaine's clients relied on RBC's reputation and expertise, invested in the RBC Transaction, and were harmed.

120.   The Enterprise, for example, made the following false affirmative representations and intentional omissions of material facts:

(a)  failed to disclose to Plaintiffs, or misrepresented to Plaintiffs, the true nature of the RBC Transactions;

(b)  failed to disclose to Plaintiffs, or misrepresented to Plaintiffs, the relationships between the conspiring Defendants; and

(c)  failed to notify Plaintiffs, or made misrepresented to Plaintiffs, in relation to, the volume of transactions of this nature that Defendants and their co-conspirators were promoting.

121.   As a result of the Enterprise's conduct set forth herein, Plaintiffs have suffered injuries in the form of financial, business, reputation and personal losses.  Moreover, as a result of the Enterprise's fraud, Plaintiffs have suffered extensive monetary damages consisting of unexpected tax liabilities, fees and commissions paid to the Enterprise, and enormous legal fees associated with Dumaine's tax shelter promoter audit and civil lawsuits as well as Ohle's criminal charges associated with the Enterprise's activities.  Further, Ohle has suffered further damages in the form of $2,983,903 restitution to the United States, past, present and future loss of earnings, reputation damages, embarrassment and humiliation, incarceration, severe mental and emotional distress and other damages recoverable under federal or state law related to the Enterprise's fraud.

122.   As a proximate cause of the foregoing, Plaintiffs have been injured in the actual amount to be proven at trial, and should be awarded damages in accordance with the evidence including attorneys' fees and costs and punitive and/or exemplary damages where applicable due to the Enterprise's fraud.

FOURTH CAUSE OF ACTION:

Civil Conspiracy

123.  The allegations contained in paragraphs 1 through 121 of the Complaint are incorporated herein by reference.

124.  As described more fully herein, the Enterprise and its Members, including the Defendants, knowingly acted in concert.

125.  The Enterprise and its Members, including the Defendants acted as described herein according to a predetermined and commonly understood and accepted plan of action, all for the purposes of earning fees on the fraudulent RBC Transactions.

126.  The acts of the Enterprise were contrary to numerous provisions of law, as stated herein.

127.  There was a meeting of the minds between and among the Defendants and the other members of the Enterprise, both known and unknown, to commit the unlawful acts alleged herein.

128.  This conspiracy to commit these unlawful, overt acts proximately caused and continues to cause Plaintiffs damages as set forth herein.

129.  As a result of the Enterprise's conduct set forth herein, Plaintiffs have suffered injuries in the form of financial, business, reputational and personal losses.  Moreover, as a result of the Enterprise's conspiracy, Plaintiffs have suffered extensive monetary damages consisting of unexpected tax liabilities, fees and commissions paid to the Enterprise, and enormous legal fees associated with Dumaine's tax shelter promoter audit and civil lawsuits as well as Ohle's criminal charges associated with the Enterprise's activities.  Further, Ohle has suffered further damages in the form of $2,983,903 restitution to the United States, past, present and future loss of earnings,

reputation damages, embarrassment and humiliation, incarceration, severe mental and emotional distress and other damages recoverable under federal or state law related to the Enterprise's conspiracy.

130.  As a proximate cause of the foregoing, Plaintiffs have been injured in the actual amount to be proven at trial, and should be awarded damages in accordance with the evidence including attorneys' fees and costs and punitive and/or exemplary damages where applicable due to Defendants' conspiracy.

FIFTH CAUSE OF ACTION:

Unjust Enrichment

131.  The allegations contained in paragraphs 1 through 129 of this Complaint are incorporated herein by reference.

132.  An actual, justiciable controversy exists between Plaintiffs on the one hand and Defendants and other Members of the Enterprise on the other.

133.  Had the Defendants not fraudulently attempt to obtain fees from the RBC Transactions, the Plaintiffs would not have suffered losses related to their income tax reporting nor would the Plaintiffs have incurred the expenses and damages associated with such actions.

134.  The payment of the fees on the fraudulent RBC Transaction enriched the Defendants and was to the detriment of Plaintiffs.

135.  Plaintiffs seek a declaration the Defendants have been unjustly enriched and all money and/or property paid to the Defendants must be returned to Plaintiffs.

136.  Plaintiffs also seek a judgment declaring each Defendant liable jointly and in solido with all unnamed co-conspirators for all damages sustained.

137. Finally, Plaintiffs seek an award of costs and reasonable and necessary attorneys' fees as are equitable and just.

SIXTH CAUSE OF ACTION:

Violation of the Louisiana Unfair Trade Practices Act

and The Illinois Consumer Fraud and Deceptive Business Practices Act

138. The allegations contained in paragraphs 1 through 136 of this Complaint are incorporated herein by reference.

139. The Defendants engaged in unfair and deceptive acts and practices described above, in violation of La. R.S. 51:1409 of the Louisiana Unfair Trade Practices Act ("LUTPA") and Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

140. The Defendants' unfair and deceptive acts and practices occurred in the conduct of trade and commerce, including offering financial and fiduciary services related to the offering of illegal tax shelter products and fraudulent investment contracts.

141. The Defendants used or employed deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression or omission of material facts with the intent that the Plaintiffs and Dumaine's clients would rely upon the misrepresentation, concealment, suppression or omission of such material facts.

142. The Defendants' actions were taken with actual and deliberate intention to harm Plaintiffs, or, if not intentional, with an utter indifference to or the conscious disregard for the injury to Plaintiffs.

143. As a result of the Defendants' conduct set forth herein, Plaintiffs have suffered injuries in the form of financial, business, reputational and personal losses. Moreover, as a result

of the Defendants' unfair and deceptive acts and practices, Plaintiffs have suffered extensive monetary damages consisting of unexpected tax liabilities, fees and commissions paid to the Defendants, and enormous legal fees associated with Dumaine's tax shelter promoter audit and civil lawsuits as well as Ohle's criminal charges associated with the Defendants' activities. Further, Ohle has suffered further damages in the form of $2,983,903 restitution to the United States, past, present and future loss of earnings, reputation damages, embarrassment and humiliation, incarceration, severe mental and emotional distress and other damages recoverable under federal or state law related to the Defendants' unfair and deceptive acts and practices.

144.  Both LUTPA and Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(c), allow this Court to award attorneys' fees and costs to prevailing Plaintiffs.

SEVENTH CAUSE OF ACTION:

Breach of Contract and Breach of Fiduciary Duty

145.  The allegations contained in paragraphs 1 through 143 of this Complaint are incorporated herein by reference.

146.  In 2002, JBO Trust and a number of Dumaine clients entered into various investment contracts with Montgomery Global as counterparty.

147.  Unbeknownst to the Plaintiffs, the RBC Defendants and the Montgomery Defendants had a secret agreement to breach the contracts resulting in the disallowance of tax losses by JBO Trust, Ohle and Dumaine's clients.  Further, Dumaine suffered damages as a result of the Defendants' breach of contract.

148.  Also unbeknownst to the Plaintiffs, the RBC Defendants and the Montgomery Defendants had a secret agreement to share the investment amounts through kickbacks.

149.   Montgomery Global breached its contract with JBO Trust and Dumaine's clients by these false statements while failing to disclose the kickback scheme.

150.   The RBC Defendants and Montgomery Defendants were Plaintiffs' fiduciaries, and, as such, owed Plaintiffs the duties of honesty, loyalty, care and compliance.

151.   The Enterprise breached its fiduciary duties to Plaintiffs by misrepresenting the RBC Transaction, providing fraudulent investment contracts and engaging in an undisclosed kickback scheme.

152.   The Enterprise breached its fiduciary duties to Plaintiffs by committing these and other acts and/or omissions.

153.   As a result of the Defendants' conduct set forth herein, Plaintiffs have suffered injuries in the form of financial, business, reputational and personal losses.  Moreover, as a result of the Defendants' breach of contract and breach of fiduciary duty, Plaintiffs have suffered extensive monetary damages consisting of unexpected tax liabilities, fees and commissions paid to the Defendants, and enormous legal fees associated with Dumaine's tax shelter promoter audit and civil lawsuits as well as Ohle's criminal charges associated with the Defendants' activities. Further, Ohle has suffered further damages in the form of $2,983,903 restitution to the United States, past, present and future loss of earnings, reputation damages, embarrassment and humiliation, incarceration, severe mental and emotional distress and other damages recoverable under federal or state law related to the Defendants' breach of contract and/or breach of fiduciary duty.

154.   As a proximate cause of the foregoing, Plaintiffs have been injured in the actual amount to be proven at trial, and should be awarded damages in accordance with the evidence including attorneys' fees and costs and punitive and/or exemplary damages where applicable due

to Defendants' breaches.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectively pray that, after all due proceedings, the Court enters judgment:

a.  As to the RICO claim, a judgment in favor of Plaintiffs and against each Defendant, jointly and severally, and in solido, with all unnamed co-conspirators, for actual damages in an amount to be proven at trial, plus treble damages, attorneys' fees, interest and costs;

b.  declaring that the Defendants are liable to the Plaintiffs for securities fraud related to the RBC Transactions;

c.  declaring that the Defendants are liable to the Plaintiffs for fraud in the misrepresentations and intentional omissions of materials facts made knowingly by the Defendants;

d.  declaring that the Defendants are liable to the Plaintiffs for the civil conspiracy;

e.  declaring that the Defendants were unjustly enriched, and ordering that the Defendants must forfeit and disgorge the money and/or property it received in the RBC Transactions;

f.  declaring that the Defendants engaged in unfair and deceptive business acts and practices;

g.  declaring that the Defendants are liable to the Plaintiffs due to their breach of contract;

h.  declaring that the Defendants are liable to the Plaintiffs due to their breach of fiduciary duty;

i.  awarding Plaintiffs damages to the fullest extent authorized by law including punitive and exemplary damages where applicable;

j.  awarding attorneys' fees, costs and expenses in favor of Plaintiffs to the fullest extent authorized by law;

k.  declaring the Defendants' liable to the Plaintiffs, jointly and severally, for all such damages; and

l.  granting such other and further relief which the Court deems necessary and proper at law and in equity.

Respectfully submitted,

Dennis E. Rinck, Jr. (#32653)
Rivertown Law Center LLC
525 Clay Street
Kenner, Louisiana 70062
Telephone:  (504) 704-1194
Telecopier:  (504) 364-9366
Counsel for Plaintiffs