UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 2002 JBO TRUST NO. 1, JOHN BREWSTER OHLE, III, and DUMAINE GROUP LLC<br><br>　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>ROYAL BANK OF CANADA, RBC DAIN RAUSCHER, JOHN KRUSE, MARK LOVE, MONTGOMERY GLOBAL ADVISORS V, LLC and ROGER GROH,<br><br>　　　　　　Defendants. | Civil Action No. 2:12-cv-01344<br><br>Section "R"<br><br>Judge Sarah S. Vance<br>Magistrate 4 – Karen Wells Roby |

**MEMORANDUM OF LAW IN SUPPORT OF ROYAL BANK OF CANADA AND RBC DAIN RAUSCHER'S MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(b)(3)**

Defendants Royal Bank of Canada and its wholly-owned subsidiary RBC Dain Rauscher Inc. (n/k/a RBC Capital Markets, LLC) (together, "RBC") respectfully move to dismiss the Complaint in its entirety under Rule 12(b)(6) because plaintiffs' claims are collaterally estopped and time-barred, and under Rule 12(b)(3) because venue is improper.

## I.  PRELIMINARY STATEMENT

The Complaint is a broadside attack on the criminal conviction of plaintiff John Brewster Ohle III, who asserts his claims from the federal prison camp at Pensacola. A former lawyer and certified public accountant, Ohle was convicted by jury in the Southern District of New York, on June 2, 2010, of tax evasion and conspiracy to defraud the Internal Revenue Service, and sentenced on January 28, 2011 to five years' imprisonment. As founder of a now-defunct firm, plaintiff Dumaine Group LLC, Ohle marketed and sold illegal "1256" tax shelters to high net worth clients, and employed this same tax shelter himself through a grantor trust, plaintiff JBO Trust No. 1 ("JBO Trust"), to defraud the IRS on his own personal taxes in 2002.

Ohle's Complaint merely recycles the same, concocted protestation of innocence he made when appealing his conviction to the Second Circuit Court of Appeals, which that court soundly rejected. Alleging RICO conspiracy, securities fraud, and a welter of thinly-pled state law claims, Ohle again contends, as he did unsuccessfully to the Second Circuit, that he was the victim rather than the perpetrator of fraud, and that he was deceived by employees of RBC into believing the "1256" tax shelter was legal. The jury in Ohle's criminal case, however, already plainly decided the issue of Ohle's culpable intent, and its decision was affirmed by the Second Circuit, which stated that the evidence as to Ohle's state of mind "convincingly demonstrate[d] an intent to defraud the United States of taxes owed."

Ohle's Complaint here merits dismissal for three principal reasons:

<u>First</u>, the fact of Ohle's conviction estops plaintiffs from asserting the central factual premise of each of their claims—that plaintiffs were unaware the "1256" shelters were fraudulent. Because the jury and Second Circuit have already determined that Ohle knew that the shelters were fraudulent, plaintiffs cannot use this forum to relitigate the question of Ohle's intent. The doctrines of collateral estoppel and *in pari delicto* accordingly preclude plaintiffs' recovery.

<u>Second</u>, because the "1256" transaction that forms the basis of the Complaint took place in December 2002—over nine years before this case was filed—each of plaintiffs' claims is time-barred. Further, the absurd claim that plaintiffs did not discover the "1256" transaction was fraudulent until Ohle's criminal trial does not suffice to warrant equitable tolling under the "discovery rule." Ohle did not need to discover the fraud, he committed it. Further, the pleadings, on their face, establish that plaintiffs should have discovered the fraud.

<u>Third</u>, blatant forum-shopping by plaintiffs warrants dismissal for improper venue. The measure of damages claimed by plaintiffs in the Complaint includes the restitution award that issued from Ohle's criminal trial, which is governed by a forfeiture order over which Judge Jed Rakoff of the Southern District of New York, who presided over Ohle's criminal trial, retained exclusive jurisdiction. As this action is a transparent attempt to collaterally attack that order, venue is plainly improper and dismissal is warranted on that basis.

2

## II. STATEMENT OF FACTS

### A. Ohle's Indictment

The grand jury indicted Ohle on November 13, 2008, charging him with two separate conspiracies to defraud the Internal Revenue Service and five substantive tax evasion charges relating to these two conspiracies. As summarized by Judge Sand, who presided over Ohle's case until it was reassigned to Judge Rakoff, "[t]he Indictment alleges that between 2001 and 2004, Ohle and various co-conspirators engaged in a massive scheme to cheat the Government out of over $100 million by causing dozens of United States taxpayers to engage in fraudulent tax shelter transactions and fraudulently report the results of those shelters on their tax returns." United States v. Ohle, 678 F. Supp. 2d 215, 218 (S.D.N.Y. 2010).

The charges relating to the first conspiracy, which involved Ohle's development and marketing of the "Hedge Option Monetization of Economic Remainder" or "HOMER" tax shelter, were severed from the remainder of the indictment by order of Judge Sand. The second conspiracy and related charges were brought as a third superseding indictment, upon which Ohle was tried and convicted. This indictment is appended as Exhibit A.[1]

As to the second conspiracy, the indictment charges that Ohle was an attorney and certified public accountant recruited in 1999 to serve as director of Bank One's new "Innovative Strategies Group." (Ex. A ¶¶ 1-3.) In February 2002, when Bank One terminated its sales of the fraudulent HOMER shelter, Ohle left that group to form plaintiff Dumaine Group LLC and continued to introduce clients to the HOMER shelter and also to a new shelter, the so-called "1256"

---

[1] A court may take notice of matters of public record when considering a Rule 12(b)(6) motion. Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

3

transaction. (Ex. A ¶¶ 3, 41, 43.) According to the indictment, Ohle defrauded Bank One of referral fees associated with the marketing and sale of the HOMER shelter, failed to report such fees to the IRS as income, and himself employed the "1256" shelter, in 2002, to fraudulently generate deductible losses to reduce his tax exposure. (Ex. A ¶¶ 17-20, 41, 43.) Ohle's 2002 use of the "1256" shelter, which he implemented through the JBO Trust, forms the basis of plaintiffs' claims in the Complaint.

**B.     The "1256" Shelter**

The core of the "1256" transaction, as Ohle describes it in his pleadings, is a series of options trades tied to the value of two different European currencies. (RICO Case Statement ("RS") at 20-22.) Theoretically, the individual option trades that make up this transaction each carry a real possibility of profit or loss for an investor. When "bundled" together into the "1256" transaction, however, the trades are perfectly off-setting, eliminating risk of any real gain or loss.

The alleged tax benefit arose from fact that Tax Code section 1256, from which the transaction takes its name, permits different gain and loss treatment for options contracts on the two currencies used in the transaction, in this case the Euro and the Danish Krone. Specifically, although the two currencies were linked in value, gains and losses from a charitable assignment of the Euro contracts were marked-to-market while those for the Krone contracts were not. Thus, by "bundling" the offsetting trades in those two currencies, and using a trust to donate the option contracts to charity before their expiration, the transaction manufactured supposedly deductible losses under section 1256 without creating any real economic risk to the investor.

Defying reason, Ohle now contends, as he did in his criminal trial and before the Second Circuit, that he was not aware of any agreement with the option trades' counterparty, defendant Montgomery Global Advisors V LLC, to keep the trades

4

"bundled." (Compl. ¶ 30; RS at 5-6.) The jury and the Second Circuit, however, have already flatly rejected this claim.

### C. The Jury Verdict and the Second Circuit's Affirmance

On June 2, 2010, after nearly three weeks of trial, the jury found Ohle guilty on each count. United States v. Ohle, No. 08-cr-1109, 2011 U.S. Dist. LEXIS 12581, *1 (S.D.N.Y. Feb. 7, 2011) (denying motion for a new trial). In response to a special interrogatory, the jury found that the Government had proven beyond a reasonable doubt Ohle's guilt with respect to his intent to defraud the IRS. Id.

The Court's instructions to the jury, appended as Exhibit B, were explicit that the crimes charged required proof that Ohle was aware of the fraudulent nature of his conduct. Specifically, Judge Rakoff instructed the jury that the losses from the "1256" transaction would be deductible only if "(a) the taxpayer's primary motive in entering into the transaction was to make a profit; (b) the taxpayer was at risk of losing the amount deducted; and (c) the transaction had 'economic substance,' meaning that it had a genuine business purpose and a reasonable possibility, even if remote, of generating profit, and was not simply entered into to create a tax deduction." (Ex. B at 20.) Judge Rakoff also instructed the jury that willfulness is a required element of the substantive tax evasion charges against Ohle, and that the jury must find that "the defendant took this act willfully, that is, intentionally and for the purpose of evading or attempting to evade his tax liability for the year in question." (Ex. B. at 19-20).

On appeal of his conviction to the Second Circuit Court of Appeals, Ohle made the same claim he does in this case—that he was a victim of the fraud related to the "1256" shelter and not its perpetrator, because "he did not have fair notice that his conduct in entering into the complex '1256' tax shelter transaction . . . could constitute a willful attempt to evade federal income taxes." United States v. Ohle, 441 F. App'x 798, 801 (2d Cir. 2011). The Second Circuit, however,

5

rejected Ohle's claim that he was a victim of the fraud, finding that Ohle's knowledge of the fraud had been conclusively established at trial:

> Trial evidence showed that Ohle, a tax lawyer and certified accountant, stated to various "1256" shelter participants that the vehicle was structured to limit their actual risk of loss to the amount invested. The jury heard further evidence indicating Ohle's knowledge that the investment would generate paper losses in far larger—i.e., multimillion dollar—amounts. It also heard that Ohle nevertheless made false statements to another tax lawyer regarding the nature of the shelter transaction to obtain an opinion letter indicating that his own investment objectives and his claimed tax deduction from these paper losses were lawful. Where the evidence so convincingly demonstrates an intent to defraud the United States of taxes owed, we need not delineate the precise boundaries of the "at risk" or "primarily for profit" theories of evasion pursued by the government ... in order to reject Ohle's fair notice argument on the merits.

Id.

### D. The Forfeiture Order

On January 7, 2011, Judge Rakoff entered a "Second Preliminary Order of Forfeiture and Restraint of Substitute Assets," appended as Exhibit C. The measure of damages that plaintiffs claim in this case includes the $2,983,903 restitution award resulting from Ohle's criminal trial, plainly covered by the Forfeiture Order. (Ex. C ¶ 1; Compl. ¶¶ 105, 110, 121, 129, 143, 153.) In the Forfeiture Order, Judge Rakoff expressly retained jurisdiction over matters relating its enforcement. (Ex. C ¶ 10.)

### E. The Complaint

This case is an attempt to relitigate the very facts the jury found against Ohle, and to collaterally attack the ruling of the Second Circuit. Plaintiffs incredibly contend that Ohle was entirely unaware of the fraudulent nature of the "1256" transaction until his criminal trial in May 2010, just under two years prior to the commencement of this civil action. As plaintiffs allege, "it was not until the

6

testimony of RBC's Kruse and Dain Rauscher's Love that the Plaintiffs could or should have known of the fraud." (Compl. ¶ 46.) This is an absurd claim, however, not just because of the jury verdict and the Second Circuit's affirmance, but also because plaintiffs' own pleadings admit they were aware the "1256" shelter was designed to create a tax loss, and additionally describe multiple events that made the fraudulent nature of the shelter unmistakable.

Specifically, as to plaintiffs' knowledge that the shelter was designed to manufacture deductible losses, the pleadings state that "Defendants RBC and Kruse represented to plaintiffs Ohle and Dumaine that the Enterprise offered new and unique 'investment' products or strategies that could reduce or eliminate clients' tax liabilities." (RS at 28; see also Compl. ¶¶ 26, 27.) In this same vein, the pleadings additionally state that "Defendants assured Plaintiffs that the tax benefits of the 1256 Trades as a whole, resulting from the creation of losses to offset gains and/or income, far outweighed any losses that might be incurred as a result of the 1256 Trades." (RS at 22.)

In addition, the pleadings describe multiple notices from the IRS, and a tax audit of Dumaine, demonstrating that plaintiffs must have known, at a minimum, that the IRS considered the shelter fraudulent. First, plaintiffs state that in 1999, the IRS issued Notice 1999-59, titled "Tax Avoidance Using Distribution of Encumbered Property," which plaintiffs state conveyed the "clear message" that "losses arising from transactions wholly lacking in 'economic substance' are not properly allowable for Federal Income tax purposes." (RS at 22.) As to the "1256" transaction and defendants' response to this Notice, the pleadings state that "Defendants ignored the clear message from the IRS—they are scrutinizing transactions of this and similar nature." (RS at 23.)

Next, the pleadings describe the 2003 issuance of IRS Notice 2003-81, titled "Tax Avoidance Using Offsetting Foreign Currency Options Contracts," that

7

"listed" the "1256" transaction. (Compl. ¶¶ 39-41.) When the IRS "lists" a transaction, it means that the Service has determined the transaction to be an impermissible tax avoidance transaction. Bemont Inv. L.L.C. v. United States, 679 F.3d 339, 342 (5th Cir. 2012). Taxpayers and advisors who fail to disclose their participation in a "listed" transaction face penalties over and above any tax liability. Id.; 26 U.S.C. § 6707A. The issuance of this Notice, plaintiffs plead, actually exposed the "1256" shelter as fraudulent: "This Notice exposed the Defendants' misrepresentations that the 1256 Trades were not a 'tax shelter', while making it absolutely clear the IRS's position on the very transactions Defendants were marketing, promoting and implementing." (RS at 24.)

Finally, the pleadings describe that in 2003 the IRS audited Dumaine, sending eight separate "information disclosure requests" in connection with its marketing of the "1256" shelter. (Compl. ¶ 36; RS at 23.) Ohle retained the law firm of Winston & Strawn to advise Dumaine throughout this process, and the IRS ultimately assessed Dumaine a "tax shelter promoter penalty" so large it put Dumaine out of business. (Compl. ¶¶ 37-38; RS at 23.) Dumaine's legal fees associated with this audit, along with IRS penalties, are part of the damages Ohle seeks to recover in this case. (Compl. ¶¶ 105, 110, 121, 129, 143, 153; RS at 9-10.)

### III. STANDARD OF LAW

A complaint may be dismissed under Rule 12(b)(6) on the basis of collateral estoppel when it appears from the face of the complaint and materials subject to judicial notice that the plaintiff has already had a key factual issue determined against him in a prior litigation. Gregory v. Drury, 809 F.2d 249, 253 (5th Cir. 1987); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1277 n. 13 (3d ed. 2002). Matters of public record are appropriately considered on a motion to dismiss under Rule 12. See fn. 1, *supra*. The law in this Circuit also is clear that a statute of limitations defense may be raised on a motion to dismiss

8

where pleadings show the claim is time-barred. Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982) ("A complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action.")

Under Rule 12(b)(3), the Court may dismiss the complaint on the basis of improper venue. Dismissal is the appropriate remedy for improper venue where a plaintiff makes an "obvious error" in selecting the improper forum, or if plaintiff could have reasonably foreseen that venue would be improper. Cote v. Wadel, 796 F.2d 981, 985 (7th Cir. 1986).

## IV. ARGUMENT

### A. THE DOCTRINES OF COLLATERAL ESTOPPEL AND IN PARI DELICTO BAR ASSERTION OF PLAINTIFFS' CLAIMS

Each of plaintiffs' claims relies on the premise that plaintiffs did not know the "1256" shelter was fraudulent, and that plaintiffs were victims of alleged misrepresentations by RBC employees Kruse and Love as to its legality. Ohle's conviction, however, rested upon the finding beyond a reasonable doubt that Ohle was aware, contemporaneously, that the transaction was fraudulent. Thus, plaintiffs are barred from recovery by the doctrine of *in pari delicto*.

This case is controlled by Wolfson v. Baker, 623 F.2d 1074 (5th Cir. 1980), where the Fifth Circuit held that a plaintiff convicted of selling unregistered stock could not maintain a subsequent civil action denying knowledge of illegality and blaming his broker for the violation. As in this case, the convicted party in Wolfson claimed, despite his conviction, that he had been unaware that his unregistered sales were illegal, that he had relied upon misrepresentations of his broker as to their legality, and that those misrepresentations proximately caused his conviction and related penalties and damages. Id. at 1075-76.

9

The Fifth Circuit observed that the crime charged required proof of willfulness or knowledge, and that the jury instructions in the criminal trial "included specific and comprehensive instructions on the knowledge/willfulness issue." Id. at 1079. Additionally, because the seller had maintained his innocence throughout the trial, the court found he had a "full and fair opportunity to litigate the issue whether he knew of the registration requirement for his sale." Id. at 1080. On these bases, the court held that non-mutual collateral estoppel applied, and the seller was barred from denying knowledge of his sales' illegality. Because of this, the doctrine of *in pari delicto* required dismissal of his claim against the broker. Id. at 1081-82; cf. Merritt v. Quaker Oats Co., 538 F.Supp. 24 (S.D. Miss. 1981) (convicted murderer estopped from blaming victim's death on negligently manufactured Fisher-Price toy).

Similarly here, Ohle's conviction required a showing that he was aware the "1256" transaction constituted tax evasion, and the instructions to the jury were explicit on this point. Additionally, like the plaintiff in Wolfson, Ohle maintained his innocence throughout his criminal trial and thus had a "full and fair opportunity" to litigate the issue of his knowledge, and even to appeal that specific issue to the Second Circuit, which held that the evidence at Ohle's trial "convincingly evidence[d] an intent to defraud the United States of taxes owed." United States v. Ohle, 441 F. Appx. 798, 801 (2d Cir. 2011).

Plaintiffs' claims, in sum, are nothing more than a patently improper attempt to relitigate issues already decided by the jury and affirmed by the Second Circuit Court of Appeals. Collateral estoppel thus bars assertion of these claims, and plaintiffs are precluded from recovering under the doctrine of *in pari delicto*.

### B. PLAINTIFFS' CLAIMS ARE UNTIMELY

As described in the pleadings, Ohle employed the JBO Trust to effect the "1256" transaction on December 19, 2002—over nine years before this case was filed. (Compl. ¶¶ 33-35; RS at 21.) None of plaintiffs' claims has a limitation period longer than five years. As pled, accordingly, the claims are untimely.

Plaintiffs moreover may not claim equitable tolling under the "discovery rule" for two reasons: First, Ohle's conviction establishes that he committed the fraud, and did not need to "discover" it; and second, the events described in the pleadings make plain that, at a minimum, a reasonably diligent plaintiff should have discovered the fraud.

#### 1. The limitation periods on plaintiffs' federal claims have elapsed

The Complaint pleads fraud under both RICO (Count 1) and the "federal securities laws" (Count 2). Under normal circumstances, the limitation period for a federal RICO claim is four years, see Rotella v. Wood, 528 U.S. 549, 552 (2000), and the limitation period for a private right of action under the federal securities laws is five years from the time of the violation or two years from its discovery. See 28 U.S.C. § 1658(b).

Here, however, plaintiffs' RICO claim is improperly duplicative under the Private Securities Litigation Reform Act, which bars the assertion of RICO claims that are actionable under the securities laws. Affco Invs. 2001, L.L.C. v. Proskauer Rose L.L.P, 625 F.3d 185, 189 (5th Cir. 2010) (PSLRA bars RICO claims that "would have been actionable as fraud in the purchase or sale of securities"); Conwill v. Greenberg Traurig, L.L.P., No. 09-cv-4365, 2011 WL 1103728 at *2 (E.D. La. Mar 22, 2011) (in a companion case against Ohle, a "1256" shelter client's RICO claim was dismissed upon the finding that it was actionable under

11

Rule 10b-5). Thus the RICO claim is, at best, subject to the same limitation period as the federal securities claim. Either period, however, has elapsed.

### 2. The limitation periods on plaintiffs' state claims have elapsed

In addition to the two federal claims, plaintiffs assert three state statutory claims and four common law claims. The state statutory claims are pled under the Louisiana blue sky law (Count 2), the Louisiana Unfair Trade Practices Act (Count 6), and the Illinois Consumer Fraud and Deceptive Practices Act (Count 6). The first of these, under Louisiana's blue sky law, is subject to a two-year prescriptive period under La. R.S. § 51:714. Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir. 1988). Claims under the Louisiana Unfair Trade Practices Act are subject to a one-year peremptive period under La. R.S. § 51:1409(E). Carriere v. Jackson Hewitt Tax Service Inc., 750 F. Supp. 2d 694, 705 (E.D. La. 2010). Finally, claims under the Illinois Consumer Fraud and Deceptive Business Practices Act are subject to a three-year limitation period under 815 Ill. Comp. Stat. 505/10a. Kremers v. Coca-Cola Co., 712 F. Supp. 2d 759, 762 (S.D. Ill. 2010).

The remaining common law claims, for civil fraud (Count 3), civil conspiracy (Count 4), unjust enrichment (Count 5), and "Breach of Contract and Breach of Fiduciary Duty" (Count 7), are each subject to the one-year prescriptive period for delictual actions set forth in La. R.S. § 6:1124. Each of these claims is delictual rather than personal because they do not "flow from the breach of a special obligation contractually assumed," but rather are alleged to arise from "the violation of a general duty owed to all persons." Carriere, 750 F. Supp. 2d at 704 (quoting Thomas v. State Employees Grp. Benefits Program, 934 So. 2d 753, 757 (La. App. 1 Cir. 2006)). Although Count 7 of the Complaint is titled "Breach of Contract and Breach of Fiduciary Duty," the contractual claim is asserted against Montgomery only, and no contract is alleged to exist between plaintiffs and RBC.

Additionally, plaintiffs do not allege the existence of a fiduciary relationship with RBC, and the pleadings contain no facts from which the Court might infer one. Omnitech Int'l v. Clorox Co., 11 F.3d 1316, 1330-32 (5th Cir. 1994) (Under Louisiana law, plaintiff must establish facts from which the court can infer existence of a fiduciary relationship). Moreover, Louisiana law provides that no fiduciary relationship will arise between a financial institution and a third party unless such relationship is expressly set forth in contract. La. R.S. 6:1124; Holmgard v. First Nat'l Bank of Commerce, 687 So. 2d 583, 587-88 (La. App. 4 Cir. 1997) (dismissing fiduciary claim by customer against financial institution where there was no writing setting forth fiduciary duty). As there was no contract between any plaintiff and RBC, there is accordingly no possibility of a fiduciary relationship under Louisiana law, and the one-year prescriptive period set forth in La. R.S. § 6:1124 applies.[2]

Thus, each limitation period on the state and common law claims, the longest of which is three years, has elapsed.

### 3. Plaintiffs are not entitled to equitable tolling under the "discovery rule"

The concocted allegation that plaintiffs could not have discovered the fraud until hearing the testimony at Ohle's criminal trial in May 2010—just under two years prior to the commencement of this case—is not only implausible, it is flatly contradicted by facts contained in plaintiffs' own pleadings. This claim, therefore, is not sufficient to warrant tolling of the limitation periods under the so-called "discovery rule."

Under federal law, a securities or RICO claim accrues when "'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise

---

[2] Alternatively, properly pled fiduciary claims against financial institutions are also limited by a one-year prescriptive period. Holmgard, 687 So. 2d at 588-89.

13

of due diligence, would have led to actual knowledge' thereof." Jensen v. Snellings, 841 F.2d 600, 606 (5th Cir. 1988) (quoting Vigman v. Community Nat'l Bank & Trust Co., 635 F.2d 455, 459 (5th Cir. 1981). Plaintiffs have an "affirmative duty" of "diligent inquiry," and a plaintiff "who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed." Id. at 607 (citing In re Beef Indus. Antitrust Litig., 600 F.2d 1148, 1171 (5th Cir. 1979); cf. Merck & Co., Inc. v. Reynolds, 130 S. Ct. 1784, 1793 (2010) ("§ 1658(b)(1)'s word 'discovery' refers not only to a plainitff's *actual* discovery of certain facts, but also to facts that a reasonably diligent plaintiff would have discovered.") (emphasis in original). A plaintiff is thus not entitled to tolling of the limitation period if the pleadings reveal facts that would "alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction." Jensen, 841 F.2d at 607. Both Louisiana and Illinois law recognize substantially identical tolling standards. Carrieri, 750 F. Supp. 2d at 708 ("Under the fourth category of *contra non valentum*, also know as the 'discovery rule,' prescription 'does not run against one which is ignorant of the facts upon which [her] cause of action is based, so long as such ignorance is not wilful, negligent or unreasonable.'" (quoting Wimberly v. Gatch, 635 So. 2d 206, 211-12 (La. 1994)); Kremers, 712 F. Supp. 2d at 764 (applying Illinois law, stating "under the discovery rule, a cause of action accrues when a plaintiff is possessed of sufficient information concerning its injury to put a reasonable person on inquiry to determine whether actionable conduct is involved.").

### a. <u>Plaintiffs are estopped from claiming belated discovery of the fraud</u>

As an initial matter, Ohle's criminal conviction estops him from claiming he did not discover the fraud until after it occurred. Ohle committed the fraud—he did not need to discover it later. Thus, for reasons elaborated above in Section IV(A), the judgment of conviction in Ohle's criminal case and the Second Circuit's decision confirming it estop Ohle from denying knowledge that the "1256" shelter was fraudulent. As such, because Ohle had contemporaneous knowledge that the transaction was fraudulent, plaintiffs' claim to have not discovered the fraud until May 2010 does not suffice to toll any limitation period.

### b. <u>A reasonably diligent plaintiff should have discovered the fraud</u>

Moreover, even assuming someone convicted of fraud could not have discovered the fraud he committed until some later date, the pleadings nonetheless describe multiple notices and events that would alert a reasonably diligent plaintiff to the violation. Three events in particular were sufficient, under the "discovery rule," to cause the various claims to accrue:

First, the pleadings state that Ohle and Dumaine were subject to a tax audit in 2003 in connection with their promotion and use of the "1256" shelter. As a result of this audit, Dumaine was assessed a "tax shelter promoter penalty" of a scale that put the firm out of business. This fact, alone, is easily sufficient to establish that plaintiffs should have discovered that the "1256" transaction was fraudulent, and thus are not entitled to tolling of the limitation period past this date. <u>131 Main Street Assocs. v. Manko</u>, 54 F. App'x 507, 511 (2d Cir. 2002) (taxpayers "should [] discover [] their injuries when the IRS ma[kes] a final determination whether it would disallow the income and expense items in question."); <u>Moorehead v. Deutsche Bank AG</u>, No. 11-cv-0106, 2011 WL 4496221 (N.D. Ill.

15

Sept. 26, 2011) (IRS audit notice sufficient to put investor on notice that tax shelter was fraudulent and cause RICO claim to accrue).

Second, the pleadings state that at the end of 2003 the IRS issued notice 2003-81, specifically addressing the "1256" shelter and stating that the losses in connection with the transaction are not allowable as deductions. Beyond providing inquiry notice, plaintiffs plead that Notice 2003-81 actually revealed Defendants' fraudulent intent to plaintiffs, stating that it "exposed the Defendants' misrepresentations that the 1256 Trades were not a 'tax shelter'." (RS at 24.) See Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 507-08 (3d Cir. 2006) (public IRS Notice stating employee benefit plan was inconsistent with tax code put users on inquiry notice, caused RICO claim to accrue).

Last, Ohle's criminal indictment, filed in November 2008, clearly put him on notice that his use of the shelter amounted to criminal tax evasion. See, e.g., Fezzani v. Bear Stearns & Co., 384 F. Supp. 2d 618, 635 (S.D.N.Y 2004) (regulatory investigation and criminal indictment of defendant sufficient to put investors on inquiry notice of fraud).

Any of these three events, individually, was sufficient to trigger plaintiffs duty of "diligent inquiry," and whether or not plaintiffs were actually aware of the fraud, they are nonetheless "charged with the knowledge of all facts such an investigation would have disclosed." Jensen, 841 F.2d at 607.

### C. IMPROPER VENUE WARRANTS DISMISSAL

Judge Rakoff's express retention of jurisdiction over the forfeiture order in Ohle's criminal case requires that the claims asserted here, which improperly attack that order, be filed exclusively with that court. Because venue in this Court is opportunistic and clearly erroneous, the Court may dismiss on that basis.

Where a federal court expressly retains jurisdiction over the enforcement of a particular judgment or order, the court's jurisdiction over matters related to the order is exclusive and requires dismissal of collateral actions brought in other venues. See, e.g., United States v. American Soc'y of Composers, 32 F.3d 727 (2d Cir. 1994) (express retention of jurisdiction over enforcement of consent judgment operated as exclusive jurisdiction clause); Battle v. Liberty Nat'l Life Ins. Co., 877 F.2d 877 (11th Cir. 1989) (court's retention of jurisdiction over final settlement judgment was exclusive).

Indeed, Judge Barbier recently reached the same result in Ohle v. Bank One Corp., No. 2:12-cv-1324 (E.D. La), a companion case filed by Ohle's wife and related trusts two days before this action for the same purpose of collaterally attacking the forfeiture proceedings in Ohle's criminal case. In that case, Ohle's wife and related trusts had entered into a stipulation with the U.S. Attorneys' Office, subsequently ordered by the court, which consented to the forfeiture of certain properties. Similar to the Forfeiture Order at issue here, that Stipulation and Order contained a clause providing that the Southern District of New York shall have exclusive jurisdiction over the interpretation and enforcement of the Stipulation. By minute entry dated August 1, 2012, Judge Barbier granted defendants' motions for dismissal for improper venue.

Here, plaintiffs expressly seek recovery from defendants of the funds addressed by the Forfeiture Order, which contains an express retention of jurisdiction by the Southern District of New York over its enforcement. Venue in the Eastern District of Louisiana is thus improper, and plaintiffs' claims should be dismissed under Rule 12(b)(3).

17

## V. CONCLUSION

For all the foregoing reasons, Defendants Royal Bank of Canada and RBC Dain Rauscher Inc. respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

                Respectfully submitted,

/s/ Edward J. Castaing, Jr.
Edward J. Castaing, Jr. (#4022)
Edward J. Lilly (#8571)
CRULL, CASTAING, & LILLY
Pan-American Life Center, Suite 2323
601 Poydras Street
New Orleans, LA 70130
(504) 581-7700

*Attorneys for Royal Bank of Canada and RBC Dain Rauscher*

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
David C. Esseks
Brian A. de Haan
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300

*Attorneys for Royal Bank of Canada and RBC Dain Rauscher (pro hac vice applications pending)*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of August, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Edward J. Castaing, Jr.
Attorney