IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| 2002 JBO Trust No. 1, | * | |
| John Brewster Ohle, III, | * | Civil Action No. 2:12-cv-01344 |
| and Dumaine Group LLC | * | |
| *Plaintiffs* | * | Section " R" |
| | * | |
| | * | Judge Sarah S. Vance |
| | * | Magistrate 4 - Karen Wells Roby |
| v. | * | |
| | * | |
| Royal Bank of Canada, RBC Dain Rauscher, | * | |
| John Kruse, Mark Love, Montgomery Global | * | |
| Advisors V, L.L.C. | * | |
| and Roger O. Groh | * | |
| *Defendants* | * | |

**********************************************************************

**<u>MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS ROYAL BANK OF
CANADA AND RBC DAIN RAUSCHER'S MOTION TO DISMISS UNDER FEDERAL
RULES OF CIVIL PROCEDURE 12(b)(6) and 12(b)(3) and DEFENDANTS JOHN
KRUSE AND MARK LOVE'S MOTION TO DISMISS COMPLAINT</u>**

Defendants Royal Bank of Canada and its wholly-owned subsidiary RBC Dain Rauscher

Inc. (n/k/a RBC Capital Markets, LLC) (collectively, "RBC Defendants") filed a Motion to

Dismiss Plaintiff's claims on August 31, 2012, under Rule 12(b)(6) as (1) being collaterally

estopped due to one of the Plaintiff's prior convictions and/or (2) as being time-barred; and,

under Rule 12(b)(3) because (3) venue is improper.  Defendants John Kruse and Mark Love

joined those arguments as well as further arguing to dismiss for (4) lack of personal jurisdiction

over Defendants Kruse and Love and (5) Plaintiff's RICO claims are barred under the Private

Securities Litigation Reform Act ("PSLRA").

*PLAINTIFFS ARE NOT COLLATERALLY ESTOPPED*
*DUE TO MR. OHLE'S CONVICTION*

Defendants claim Ohle's conviction "collaterally estops" him from asserting a claim against Defendants because "the jury and Second Circuit have already determined Ohle knew that the shelters were fraudulent." This statement is patently false and purposefully misleading as will be clearly shown below.

Collateral estoppel applies where "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 351 n.4 (5th Cir. 2004). Each condition must be met in order for collateral estoppel to apply.

It should first be noted that Defendants specifically raise its defense of collateral estoppel against Plaintiff Ohle only. Their defense of collateral estoppel was not, and can not be, raised against Plaintiffs 2002 JBO Trust No. 1 and Dumaine Group LLC. Accordingly, the remainder of this analysis will focus on the only remaining Plaintiff that collateral estoppel is alleged to apply against.

Taking these elements out of order, with regard to element (3)--whether the parties were cast as adversaries in the first action--strict mutuality of parties is not necessary for the court to apply collateral estoppel. *McCoy v. Hernandez*, 203 F.3d 371, 374 (5th Cir. 2000). However the party applying collateral estoppel must have at least been in privity with the party to the first action. *Id.* When applying collateral estoppel, parties are in privity with one another when (1) they control an action even if they are not parties to it; (2) their interests are represented by a

party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior actions." *Id.* Defendants' defense of collateral estoppel fails because neither Royal Bank of Canada, RBC Dain Rauscher, John Kruse, Mark Love, Roger Groh nor Montgomery Global Advisors, V (collectively, the Defendants) were cast as adversaries in Mr. Ohle's criminal trial. There is nothing in the indictment, jury instructions or otherwise that mention or refers to any of these Defendants in any manner whatsoever. Further, Defendants were not aggrieved parties, not part of a Criminal Restitution Order, and not represented by the United States Attorney's Office. In short, Defendants can not establish mutuality of the parties. As such, this Court can end its inquiry at this point and deny the Defendants' defense of collateral estoppel.

However, Defendants' argument is so ludicrous and desperate to manufacture a defense that it can not survive any element of the three elements necessary to raise this defense. Returning to the first element of collateral estoppel--whether the facts of the first action were fully and fairly litigated, this Court will see that Defendants misrepresent the charges litigated in Mr. Ohle's criminal trial.

A brief history of Mr. Ohle's criminal conviction is necessary to correct RBC Defendants' misrepresentations. Mr. Ohle was convicted only of the following three counts (see *USA v. Ohle, et al*, 08-CR-011094 (S.D.N.Y. 2010):

> Count 1 - 18 U.S.C. 371   Conspiracy to Defraud the United States and to Commit Wire Fraud Count 2 and 3 - 26 U.S.C. 7201   Tax Evasion

RBC Defendants' Motion states that "Ohle and various co-conspirators were engaged in a massive scheme to cheat the Government out of over $100 million by causing dozens of United States taxpayers to engage in fraudulent tax shelter transactions and fraudulently report the

results of those shelters on their tax returns."  What RBC Defendants purposefully fail to advise this Court, is that those criminal charges were DISMISSED.  Further, RBC Defendants' again attempt to mislead this Court by recharacterizing the "Conspiracy to Defraud the United States" component of Count 1 as involving the RBC tax shelter.  As will be shown below, Count 1 had nothing to do with RBC's 1256 tax shelter.

As further proof that the RBC Defendants' assertion is false that the jury found that Mr. Ohle knew the RBC's tax shelters were fraudulent, Plaintiffs point this Court to United States District Court Judge Jed S. Rakoff's statements at Mr. Ohle's trial, "Actually, I thought the government was quite good in its opening in making clear that the legality of the tax shelters per se was not in issue.  If the jury had any doubt on that, it was clarified by your opening, which made that point more than 14 times.  I don't disagree that your are right to continue to alert the Court to that issue . . . " (Trial Transcript of *USA v. Ohle, et al*)  and the again, "Ladies and gentlemen, I you [sic] should tell you that there is nothing illegal per se about tax shelters.  These are legitimate ways of people reducing their taxes and it's not the tax shelter or shelters that may be involved in this case, and their legitimacy is not an issue"  (Trial Transcript of *USA v. Ohle, et al*)

After a one week scheduling delay in Mr. Ohle's criminal trial, Judge Rakoff "reminded" the jury of the charges against Mr. Ohle,

> "Ladies and gentlemen, before we get going again with the witness, I thought it might be useful for me to just remind you of what the basic charges are in this case.  At the conclusion of the trial I am going to give you very detailed instructions in writing that we will read together here in open court and you will also take with you into the jury room, and that will set everything out in detail.  This is just kind of a very broad overview by the way of reminder, but by way of reminder there are three charges, or what we call counts, made in this case.

Count 1 charges that both the defendants participated in a conspiracy, that is, an unlawful agreement to commit various kinds of fraud. I will provide you later with more details about the specific types of fraud that are here alleged, and I will give you legal definitions and so forth, but again by way of broad overview, the government alleges that Mr. Ohle and Mr. Bradley agreed, A, to embezzle monies from Mr. and Mrs. Ames by means of an allegedly fraudulent investment program called Carpe Diem; B, to fraudulently obtain referral fees relating to the another tax shelter called Homer; and C, to defraud the IRS, the Internal Revenue Service.

Count 2 charges Mr. Ohle alone with evading payment of income taxes that he otherwise owed or 2001 by failing to report income derived from the alleged conspiracy and otherwise.

And Count 3 charges Mr. Ohle alone with evading payment of income taxes derived from the alleged conspiracy and otherwise." [Trial Transcript, p. 1202-03 *USA v. Ohle, et al*]

Mr. Ohle certainly concedes that he was convicted on three counts related to wire fraud against Bank One and the resulting failure to report those proceeds on his tax returns in 2001 and 2002. As additional allegations in the tax evasion counts, the Government argued that Ohle failed to report proceeds "embezzled" from a trust in 2001 and 2002 and overstated deductions related to 2002 JBO Trust No. 1's involvement in RBC's 1256 tax shelter transaction. Neither the embezzlement proceeds nor deductions related to RBC's 1256 tax shelter transaction were necessary elements for the jury to convict Mr. Ohle on Count Three. Further, nothing involving Defendants were part of the jury instructions in connection with Defendants' burden of showing this court that the issue was "fairly and fully litigated".

In fact, the jury in Mr. Ohle's case did not even consider, nor was it given any instructions to consider RBC's 1256 tax shelter. Specifically, Jury Instructions No. 10 and No. 11 (attached as Exhibit 6) clearly define what "acts" the jury considered in its counts against Mr. Ohle. Unfortunately, Defendants flat out misrepresent to this Court the following, "Similarly here, Ohle's conviction required a showing that he was aware the '1256' transaction constituted tax

evasion, and the instructions to the jury were explicit on this point."  RBC Motion to Dismiss, p.

10.

As this Court can see from a simple reading of these jury instructions, there was no

consideration by the jury of Mr. Ohle's participation in RBC's 1256 tax shelter transaction or any

other elements of the facts required for Defendants' to meet its obligation to prove that the issue

was "fully and fairly litigated" as required under the first element of the three prong test to

sustain a defense of collateral estoppel.

Finally, Defendants also fail to meet their burden on the second element of the collateral

estoppel doctrine:  whether the facts sought to be litigated in the second action were essential to

the judgment in the first action.  As previously shown, Mr. Ohle's "involvement" in RBC's 1256

tax shelter was not an essential element to Mr. Ohle's conviction.  Defendants have not, and can

not, demonstrate that the elements of RBC's tax shelter fraud were essential to the findings in Mr.

Ohle's criminal trial.  Accordingly, Defendants fail to meet any of the required three elements to

sustain its defense under the collateral estoppel doctrine.  Thus, this Court should easily come to

the inevitable conclusion that it must deny Defendants' Motion to Dismiss based on the doctrine

of collateral estoppel against Plaintiff Ohle on these grounds.

### *PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED*

Defendants attempt to assert that all of Plaintiffs' claims are time barred because RBC's

1256 tax shelter transaction were implemented on December 19, 2002 - nine years ago.  Even if

this Court was inclined to accept Defendants' assertion that  December 19, 2002 began the tolling

period, which it should not, as explained below, such an assertion would not bar Plaintiffs' claims

against Defendants for their breach of fiduciary duties and intentional misrepresentations of

material facts regarding the contracts involved in RBC's 1256 tax shelter transaction which give rise to the Plaintiffs' claims.  These claims are subject to a ten (10) year prescription period. See La. R.S. 42:1461(c).  Furthermore, Plaintiffs' claims against the Defendants for their breach of contractual obligations whether or not fraud applies to such breach(es) are also subject to a ten (10) year prescription period under Louisiana law.  Also, where fiduciary duty breaches contain elements of contractual and delictual acts, that duty constitutes a breach of contract and is subject to a ten (10) year prescription.  See *Davis v. AG Edwards & Sons, Inc.*, 635 F.Supp 707, 714 (W.D.La. 1986).  "When evaluating which prescriptive period is applicable to a cause of action, courts first look to the character of the action described in the pleadings", quoting *SS v. State ex rel. Dep't of Social Services*, 831 So.2d 926, 931 (La. 2002).

RBC Defendants, no doubt cognizant of this argument, then attempt to "escape" responsibility for their fraud by "broad-stroking" all of Plaintiff's allegations, claiming that "Each of these claims (state law claims) is delictual rather than personal because they do not 'flow from the breach of a special obligation contractually assumed', but rather are alleged to arise from 'the violation of a general duty owed to all persons'."  Defendants could not be more misleading.  Specifically, as described in more detail below, Plaintiffs claim that Defendants intentionally and fraudulently misrepresented the nature and context of the contracts between Plaintiffs and Defendants.  (See Plaintiffs' Complaint, paragraphs 23, 26, 27, 32, 49, 50, 51, 52, 53, 54, 55, 57, 80, 83, 87, 88, 102, 151 and 153).

Defendants also attempt to side-step not only their fiduciary duty to Plaintiffs, but also their contractual duties to Plaintiffs.  In support of their Rule 12(b)(6) Motion, Defendants incorrectly state to this Court that "[A]lthough Count 7 of the Complaint is titled 'Breach of

Contract and Breach of Fiduciary Duty', the contractual claim is asserted against Montgomery only, and no contract is alleged to exist between plaintiffs and RBC."  See Defendants' Rule 12(b)(6) Motion at pp. 12-13.  Defendants misrepresent Plaintiff's Complaint as Plaintiffs, in fact, allege that Defendants RBC and RBC Dain Rauscher had contractual deals with and/or obligations to Plaintiffs.  Specifically, in paragraph 150 of the Plaintiffs' Complaint, Plaintiffs allege as follows:  "The RBC Defendants and Montgomery Defendants were Plaintiffs' fiduciaries, and, as such, owed Plaintiffs the duties of honesty, loyalty, care and compliance." Thereafter, paragraphs 151 et seq. go into further detail about the fiduciary duty as alleged and the breach of such duty.  As such, Defendants argument that Plaintiffs are not alleging that they were owed a fiduciary duty by Defendants is incorrect.  RBC Defendants clearly acted as Montgomery Global's agents in every aspect of the transactions including solicitation of clients, design and implementation of Forward Contracts and/or Options, creation of the contracts between the parties (trade confirmations) and pricing and reporting of the Forward Contracts and/or Options.  RBC Defendants can not escape responsibility for its fraud by claiming it was not a "party" to the contracts.  Accordingly, RBC Defendants along with its co-conspirators owed Plaintiffs as well as the other 64 victims a fiduciary duty.

Plaintiffs also allege in paragraph 49 of their Complaint, "On May 26, 2010, Plaintiffs further learned that the RBC Transaction was a sham transaction itself whereby the underlying contracts were fraudulent."  Again, in paragraph 51 of the same complaint, Plaintiff alleges "[RBC employee] Kruse testified that Forward Contracts and Options 'were not allowed to be pulled apart to expose the taxpayers to risk'."  The Complaint also alleges contractual relationships between Plaintiffs and Montgomery Global and its agents, RBC Defendants and

Defendants Love and Kruse, in paragraphs 52, 53, 54, 55, 56 and 57.  Finally, Plaintiffs specifically allege in paragraphs 147 and 148 of Count 7 that RBC Defendants "breach[ed] the contracts".  As such, Defendants' contention that Plaintiffs did not plead a contractual relationship between Plaintiffs and Defendants is simply not true.  The result of this contractual relationship is a ten year prescription period.

Because Defendants cite the case of *Conwill v. Greenburg Traurig LLP.*, No. 09-cv-4365, 2011 WL 1103728 (E.D. La. Mar 22, 2011) to this Court in their Rule 12(b)(6) Motion, they should be aware that not only is a breach of fiduciary duty subject to a prescription period of ten years, but so are fraud claims involving intentional errors and omissions.  Such claims are treated as a personal action under La. Civil Code 3499 and consequently subject to a ten (10) year prescription period.  See *Conwill.*

Defendants ask this Court to merely dispense with any evidence and dismiss Plaintiffs' Complaint based on prescription with a perverse reading of the Complaint and with a misapplication of the law.  Defendants have filed a Motion to Dismiss Under Rule 12(b)(6) and Rule 12(b)(3), not a Motion for Summary Judgment.  Thus, for purposes of this Motion, Plaintiffs are not required to show issues of material fact are present, but rather that the Complaint adequately addresses the issues present before this Court and that the Complaint, on its face, is not subject to dismissal under Rule 12(b)(6).

RBC Defendants "rush" to the conclusion that all the claims alleged by Plaintiffs in the Complaint are delictual claims subject to a one year prescription period, hoping that this Court ignores the intentional nature of the fraud of its employees and other co-conspirators.  Instead, RBC Defendants must embrace the fact that its employees, Defendants Love and Kruse, have

admitted, under oath, their intentional fraud and conspiratorial involvement with other Defendants, including Montgomery Global and Groh, to defraud Plaintiffs and sixty-four (64) other victims.

Plaintiffs' Complaint painstakingly lays out the manner in which Defendants Kruse, Love and Groh intentionally and purposefully "camouflaged" their fraud by intentionally misrepresenting and omitting material facts. Based upon Defendant Kruse's testimony, RBC instructed Defendants Love and Kruse to find another counterparty to replace RBC in the 1256 tax transactions. Upon information and belief, RBC became aware of the "problems" inherit in its representations but failed to stop implementing the transactions. Instead, RBC chose to insert a client as counterparty and continued executing the transactions. Of course, Defendants underlying motive was simply, money. However, once their intentional fraud scheme and conspiracy was discovered by the IRS, subject to an immunity agreement with the United States Government, Defendants Love and Kruse finally admitted the details of their fraudulent scheme and the purposeful, knowing and intentional nature in which they hid their conspiracy. Consequently, Plaintiffs who were defrauded by these very acts, specifically, consistently and repeatedly pled with purpose the fact that the fraud of these Defendants was "intentionally and knowingly made" as well as "intentionally and knowingly suppressed" (See Plaintiffs' Complaint, paragraphs 70, 71, 73, 92, 93, 97, 114, 115, 117, 118, 119, 120, 124 and 142). As such, Plaintiffs clearly have not only sufficiently pled the allegations, but have also gone beyond its current requirements by presenting evidence that would defeat a Motion for Summary Judgment if ever brought. Thus, this Court should deny Defendants' Rule 12(b)(6) Motion on these grounds.

Having addressed the ten year prescription period, Plaintiffs turn to Defendants' argument that neither equitable tolling under the "discovery rule" nor the Doctrine of Contra Non Valentem should apply to any of the other claims by Plaintiff which would not be subject to a ten (10) year prescription period.  Before addressing the application of these doctrines, it should be noted that none of the "storm warnings" listed by Defendants would have put Plaintiffs on notice of Defendants' fraud.  Defendants merely state in their Motion that Plaintiffs Ohle and Dumaine Group should have been on notice of its illegal tax shelter when the IRS requested a tax audit. However, defendants fail to mention to this Court that Plaintiffs Ohle and Dumaine Group's tax audit were not based on, nor raised the issue of Defendants' fraud.  Mr. Ohle's income tax audit only addressed whether the IRS was going to allow the deductions from RBC's 1256 tax shelter. In other words, the issue of Defendants' fraud in the contracts and trade confirmations was never raised nor could have been contemplated.  It should also be noted that Mr. Ohle was never assessed additional taxes related to this audit.  Defendants' reliance on *131 Main Street Assocs. v. Manko*, 54 F.App'x 507, 511 (2d Cir 2002), which held that taxpayers "should [] discover [] their injuries when the IRS ma[kes] a final determination whether it would disallow the income and expense items in question" not only fails to support Defendants' position, but establishes January 11, 2011 as a relevant date when Mr. Ohle was ordered to pay $2,983,903 restitution to the IRS related to RBC's 1256 tax shelter transaction.

In regard to Dumaine Group's tax shelter promoter audit, the inquiry was whether RBC's 1256 tax shelter transaction met certain ratios requiring registration as a tax shelter.  Clearly, this audit did not involve or reveal Defendants' fraud.  Tax shelters are not equated with fraud; instead, tax shelters only require registration and disclosure.  Therefore, Defendants statement

that these audits would have been "storm warnings" of Defendants' fraud is clearly erroneous. Likewise, Defendants reliance on *Moorehead v. Deutsche Bank AG*, No. 11-cv-0106, 2011 WL 4496221 (N.D. Ill. Sept. 26 2011), to support that an IRS audit notice is sufficient to put investor on notice that tax shelter was fraudulent and cause RICO claim to accrue, is once again distinguishable. Plaintiffs are not claiming that Defendants provided incorrect or negligent tax advice, instead Plaintiffs are claiming that Defendants intentionally misrepresented the Forward Contracts and/or Options in the contracts, written representations and other statements. This fraud was not discoverable by the IRS issuing a notice that it may challenge the tax treatment of RBC's 1256 tax shelter transactions. In fact, without Defendants' fraud regarding the contracts, Plaintiffs should have prevailed on the IRS' civil challenge since the testimony at trial did not support the Government's other arguments (e.g., lack of economic substance).

Finally, Defendants argue that Mr. Ohle's indictment on November 14, 2008 should have put Plaintiffs on notice. However, nothing in the indictment, discovery or pre-trial motions indicated that Defendants had fraudulently represented the contracts (trade confirmations) and other affirmative promises (representations). On May 26, 2010, Defendant Kruse, for the first time, stated that the Forward Contracts and/or Options used in RBC's 1256 tax shelter transaction "were not allowed to be pulled apart to expose the taxpayers to risk" [Plaintiffs' Complaint, para. 51], despite the affirmative promises and representations in Defendants' written contracts (trade confirmations) and representations. While this issue was not determinative of Mr. Ohle's guilt or innocence on Count 3, it was a factor in determining Mr. Ohle's restitution. The restitution amount was not determined until his sentencing on January 24, 2011, and not "final" until the Second Circuit ruled on his appeal on October 20, 2011.

One final point is that RBC Defendants state in their Rule 12(b)(6) Motion, "Defying reason, Ohle now contends, as he did in his criminal trial and before the Second Circuit, that he was not aware of any agreement with the option trades' counterparty, defendant Montgomery Global Advisors V LLC, to keep the trades 'bundled'."  As previously discussed, the jury did not reach such a finding.  This issue was never refuted at trial as this issue was not "fairly and fully litigated".  There was no testimony on this issue by anyone other than Defendant Kruse who, under an immunity agreement, made this assertion despite the written contracts (trade confirmations) and written representations made by his co-conspirators that were relied upon by Plaintiffs and sixty-four (64) other victims.  Defendant Kruse who received undisclosed, fraudulent kickbacks from RBC's 1256 tax shelter transaction secreted Defendants' fraud until Mr. Ohle's criminal trial.

Defendants' other argument - that Mr. Ohle, not the other Plaintiffs, is barred from equitable tolling under the "discovery rule" - fails for the same reasons previously presented.  Namely, the original indictment against Mr. Ohle on November 14, 2008 was superseded three times before Mr. Ohle was brought to trial on wire fraud charges against Bank One.  The Government did not allege in any of those indictments that Mr. Ohle had knowledge of Defendants' fraud concerning the contracts (trade confirmations) or named any of the Defendants in this case as co-conspirators.  Neither Mr. Ohle nor his criminal defense counsel was made aware of Mr. Kruse's confession that these contracts (trade confirmations) and representations were fraudulent in pre-trial motions and/or discovery.  Instead, the only claims made by the Government were that RBC's 1256 tax shelter lacked economic substance and/or violated the at-risk rules.  Nothing about these claims alerted Mr. Ohle, his defense counsel or the other

Plaintiffs to RBC's fraud.  As a result, the injury could not have been discovered before May 26, 2010.

However, the Doctrine of Contra Non Valentem should lead this Court to use January 14, 2010 (restitution order), January 24, 2010 (sentencing) or October 20, 2010 (order in appeal) as the tolling date for the statute of limitations.  The "damage" to Mr. Ohle was not, and could not, be discovered until the Court's restitution finding.

Now turning to Plaintiffs' claims, it is clear that Plaintiffs' RICO claims are timely. Whether this Court uses the date of Mr. Kruse's "revelation" of fraud, the date of Mr. Ohle's restitution order, the date of Mr. Ohle's sentencing or the date of the Order in Mr. Ohle's Appeal, the federal RICO claim clearly was filed with the limitation period of four years.  RBC Defendants "mention" that Plaintiffs' RICO claims should be barred under the Private Securities Litigation Reform Act, which bars the assertion of RICO claims that are actionable under the securities laws.  Like Defendants Love and Kruse's Rule 12(b)(6) Motion, RBC Defendants cite *Conwill v. Greenberg Traurig, L.L.P.*, No. 09-cv-4365, 2011 WL 1103728 (E.D. La. Mar 22, 2011) to further this proposition.  This issue will be treated more fully below but it is clearly improper to dismiss in a Rule 12(b)(6) Motion without supporting evidence.  Further, the evidence of Mr. Ohle's involvement will be completely different than Mr. Conwill's, resulting in the survival of Plaintiffs' RICO claims.  It should be noted that the Conwill Court required the parties to make such motion as a Summary Judgment Motion supported by evidence.  This baseless claim should be dismissed as premature and unsupported.

However, even if the RICO claim was dismissed, which it should not be, a private right of action under the federal securities laws is five years from the time of violation or two years

from its discovery.  See 28 U.S.C.  1658(b).  Again, Plaintiffs' claim was filed within two years from its discovery.

The state law claims pled under the Louisiana blue sky law (Count Two) and the Illinois Consumer Fraud and Deceptive Practices Act (Count Six) are also clearly timely with two-year prescriptive period under La. R.S.  51:714 and three-year limitation period under 815 ILL. Comp Stat. 505/10a, respectively.  The final state law claim under the Louisiana Unfair Trade Practices Act is subject to a one-year peremptive period under La. R.S.  51:1409(E).  Therefore, if this Court determines that October 20, 2010 is the applicable date for damages to be "determined" such claim is timely.

### *VENUE IS PROPER IN THE EASTERN DISTRICT OF LOUISIANA*

The third element of Defendants' Rule 12(b)(6) and 12 (b)(3) Motion is Defendants' claim that this Court is of improper venue.  Defendants solely and incorrectly base their entire argument on the premise that the Forfeiture Order in Mr. Ohle's criminal case somehow grants the retention of jurisdiction in the Southern District of New York.  Defendant could not be any more wrong or misleading in making such a statement.  Callous of the blatant facts which may support Rule 11 sanctions, Defendants misrepresent to this Court that "[H]ere, plaintiffs expressly seek recovery from defendants of the funds addressed by the Forfeiture Order, which contains an express retention of jurisdiction by the Southern District of New York over its enforcement."  Plaintiffs challenge Defendants to produce any evidence whatsoever to this Honorable Court that any item in the Forfeiture Order has any connection to Plaintiffs' claims against Defendants.  Instead, the Forfeiture Order in Mr. Ohle's criminal trial, once again, is solely related to the charge of wire fraud against Bank One.

Defendants cite Judge Barbier's decision in *Ohle v. Bank One Corp.*, No. 2:12-cv-1324 (E.D.La.) to "strengthen" this proposition.  There are no similar Plaintiffs in these two cases.  In the case before Judge Barbier, Mr. Ohle's wife, Patricia Ohle, and other family entities filed suit against Bank One (n/k/a J.P. Morgan Chase) for fraud related to Bank One's claims that the "wire fraud" proceeds belonged to Bank One.  Recently discovered new evidence shows that these monies were paid out by the law firm, Jenkens & Gilchrist, not Bank One.  Mr. Ohle is attacking his criminal conviction on the same basis.  Judge Barbier based his dismissal of that case based on improper venue, citing the Southern District of New York as the mandated venue in a Stipulation between Patricia Ohle and the other family entities and the United States.  Plaintiffs are appealing that ruling to the Fifth Circuit Court of Appeals as the Stipulation was between the plaintiffs and the United States, not Bank One.  Further, the cause of action is fraud, not an attack on the forfeiture to the Government, that was discovered after the execution of the Stipulation.  Notwithstanding that fact, neither Plaintiffs or RBC Defendants is, in any way, shape or form, related to the Stipulation.  Further, the claims against the Defedants are also wholly unrelated to the items in Mr. Ohle's Forfeiture Order, which are solely based upon wire fraud against Bank One.  Plaintiffs are confident that after Defendants read the Forfeiture Order more carefully that they will withdraw this argument before this Court.  This is simply an irresponsible argument based on incorrect facts that must be summarily denied.

*THIS COURT POSSESSES PROPER PERSONAL JURISDICTION*
*OVER DEFENDANTS LOVE AND KRUSE*

While RBC Defendants acknowledge personal jurisdiction of this Court over the claims of the Plaintiffs, such jurisdiction is challenged by Defendants Love and Kruse.

As noted in defendants memorandum, specific jurisdiction exists when the litigation specifically arises out of or is related to a defendant's contacts with Louisiana.  To establish jurisdiction, Plaintiff's must show that:

(1)  the defendant purposely directed his activities at the forum state or purposely availed himself of the privilege of conducting business in that state, and

(2)  the alleged injury arises out of the defendants forum-related activities.

In intentional tort cases, specific jurisdiction exists "if the plaintiff can show that the defendant engaged in intentional conduct expressly aimed at the forum state with the knowledge that the plaintiff would be injured there."  *Macey*, 2012 WL 527526.  Plaintiffs must show more than harm occurring in Louisiana; there must be a connection between the alleged tortuous conduct and Louisiana, which the Plaintiffs can establish in the instant matter.  *Id.*  The applicable standard in negligence cases is slightly different, but also met by Plaintiffs.  As to negligence, specific jurisdiction exists (a) if the action arises out of the Defendants contacts, (b) if the Defendants purposely avail themselves of the privilege of conducting activities in Louisiana, and (c) if the assertion of personal jurisdiction is reasonable.  *Mitchell v. Shiffermiller*, No. 03 C4794, 2004 WL 178188 (N.D. Ill. Jan 14, 2004).

In the instant matter, Plaintiffs can plainly establish proper jurisdiction under both the intentional tort standard and under the negligence standard.  Plaintiffs have alleged in their Complaint that Defendants engaged in a course of conduct related to them in Louisiana, not

related to one transaction, but related to multiple transactions between the Defendants Love and Kruse and Louisiana citizens and/or Louisiana trusts.  Defendant Love was responsible for the design and marketing of RBC's 1256 tax shelter, while Defendant Kruse was responsible for the design, marketing, implementation and documentation of RBC's 1256 tax shelter with Plaintiff 2002 JBO Trust No. 1, a Louisiana trust, with a Louisiana citizen as trustee as well as, at least, two other Louisiana residents, Daniel Conwill and Stephen Hansel.  Defendants Love and Kruse discussed the design and characteristics of the Forward Contracts and Options with these Louisiana residents and/or their tax advisors.  In addition to telephone calls, emails and other correspondence, Defendants specifically provided all documentation for the Forward Contracts and Options as well as all settlement confirmations.  In addition, these Defendants were involved in the transfer of certain Forward Contracts and Options to Louisiana charities, such as St. Elizabeth Foundation and others.  Defendants also profited from their business contacts with Louisiana residents and entities, splitting these monies among themselves.

Clearly, Defendants Love and Kruse exercised specific jurisdiction since as "a non-resident defendant [they have] purposely directed [their] activities at a forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp.*, 253 F. 3d at 868 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L.Ed.2d 528, 105 S.Ct. 2174 (1985)).  Thus, specific jurisdiction exists since Defendants Love and Kruse have sufficient contacts with Louisiana "such that it would reasonably anticipate being haled into court there" and Plaintiffs claims "arise out of or relate to the defendant's purposeful contacts with the forum.*"  ITL Int's, Inc. v. Constenla*, S.A. 669 F.3d 493, 498-500 (5th Cir. 2012).

Defendant Kruse admitted in Federal court, testifying pursuant to his non-prosecution agreement, that RBC's dealings with 2002 JBO Trust No. 1, a Louisiana Trust, and the other Louisiana clients were purposely and intentionally fraudulent.  In fact, Defendants' fraudulent conduct related not only to these three Louisiana clients but at least 62 other clients as well. Certainly, Defendants knew that their actions, which were not only purposeful, but also intentional, could result in suits in Louisiana courts based on their misconduct.  Accordingly, Defendants being prosecuted in Louisiana by Louisiana residents and/or entities can not, and does not, violate "fundamental notions of fair play and justice".

Noticeably missing from Defendant Love and Kruse's Motion is any proof, including affidavits, that they did not have purposeful and/or meaningful or intentional contacts with this forum State of Louisiana.  In fact, the only factual allegation made by Defendants Love and Kruse is that they do not "live or do business in Louisiana".  This statement - that they have not conducted business in Louisiana - is unsupported and inconsistent with their prior statements and conduct.

As such, Defendants Love and Kruse had the required minimal contacts with Louisiana and purposely availed themselves of business in Louisiana.  Requiring Defendants Love and Kruse to litigate their intentional fraud, breach of fiduciary duty as well as Plaintiffs' other claims which harmed Louisiana residents and/or entities, including 2002 JBO Trust No. 1, not only does not violate traditional notions of fair play and justice, but provides Louisianans the protection of its court system when foreign individuals and/or companies commit fraudulent acts in Louisiana against Louisiana residents and/or entities.  As such, Defendants Love and Kruse's Motion to Dismiss must be denied.

*PLAINTIFFS' RICO CLAIMS ARE NOT BARRED BY PSLRA AND*
*DISTINGUISHABLE FROM CONWILL'S CLAIMS*

Defendants Love and Kruse, and RBC Defendants, as previously mentioned, argue that

Plaintiffs' claims are barred by the Private Securities Litigation Reform Act ("PSLRA").  The

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.S.  1961 et seq., statute

provides a private right of action for a person harmed by a pattern of racketeering activity.  18

U.S.C.S. 1962, 1964(c).  However, Congress limited that right by amending RICO in 1995, as

part of the PSLRA, to bar civil RICO claims based on any conduct that would have been

actionable as fraud in the purchase or sale of securities.  18 U.S.C.S.  1964(c).  Accordingly, if

the racketeering activity alleged to support a RICO claim is characterized by the plaintiffs as

wire, mail or bank fraud, but it also amounts to securities fraud, the claim must be dismissed.

The United States Supreme Court defined an investment contract as a contract,

transaction or scheme whereby a person invests his money in a common enterprise and is led to

expect profits solely from the efforts of the promoter or a third party.  The *Howey* test thus

contains three elements:  (1)  an investment of money; (2) in a scheme functioning as a common

enterprise; (3) with the expectation of profits will be derived solely from the efforts of

individuals other than the investors.  To determine whether a common enterprise has been

established within the meaning of *Howey*, the United States Court of Appeals for the Fifth

Circuit has focused on the vertical commonality between investors and the promoter.  While

other circuits have taken a different approach, according to the Fifth Circuit, the critical inquiry is

confined to whether the fortuity of the investments collectively is essentially dependent on

promoter expertise.  While our standard requires interdependence between the investors and the

promoter, it does not define that interdependence narrowly in terms of shared profits or losses. Rather, the necessary interdependence may be demonstrated by the investors' collective reliance on the promoter's expertise.

Defendants ask this Court to grant dismissal based on the findings of this Court in *Conwill*. In regards to the second prong, the Court found that "plaintiff in this case had no role in structuring or implementing the trades that constituted the Transaction. He did not exercise control over the timing of the trades. He did not select the foreign currencies used or decide the amount of the options. He, himself, stated that 'I just sent somebody money. They orchestrated the trades.' Further, he stated, '[a]gain, they were calling the shots on the trades, not me . . . It was a discretionary account." *Conwill*, 2001 U.S. Dist. LEXIS 29268 (March 21, 2011) at p. 7. Importantly, the Court went on to state, "Based on these admissions, it is apparent that the success of the transaction was dependent on the expertise of Montgomery, Groh and Ohle." Accordingly, Defendants can not satisfy this prong. Likewise, Defendants can not satisfy the third prong. Similar to the common enterprise argument, Plaintiffs, in this case, are distinguishable from Conwill who had no control over the trading in his account. Accordingly, based on the cited *Conwill* case, Defendants fail to establish that PSLRA bars Plaintiffs' claims.

WHEREFORE, pursuant to the facts, and law Plaintiffs, 2002 JBO Trust No. 1, John B.

Ohle, III, and Dumaine Group, LLC urge this Honorable Court to deny the Motions to Dismiss

filed by defendants, Royal Bank of Canada, RBC Dain Rauscher, John Kruse and Mark Love.

Respectfully submitted,

*/s/ Dennis E. Rinck,Jr.*
DENNIS E. RINCK, JR. (#32653)
Rivertown Law Center, LLC
525 Clay Street
Kenner, Louisiana 70062
Telephone: (504) 704-1194
Facsimile: (504) 364-9366
dennisr@rivertownlaw.com
Counsel for Plaintiffs, 2002 JBO Trust No. 1, John
Brewster Ohle, III, and Dumaine Group, LLC

## Certificate of Service

The undersigned attorney hereby certifies that he has electronically filed the foregoing
with the Clerk of Court by using the CM/ECF system on this 16th day of October, 2012, which
will send a  copy of the foregoing pleading to all counsel of record by notice of electronic filing.

*/s/ Dennis E. Rinck,Jr.*
DENNIS E. RINCK, JR.