UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 2002 JBO TRUST NO. 1, JOHN BREWSTER OHLE, III, and DUMAINE GROUP LLC<br><br>        Plaintiffs,<br><br>        v.<br><br>ROYAL BANK OF CANADA, RBC DAIN RAUSCHER, JOHN KRUSE, MARK LOVE, MONTGOMERY GLOBAL ADVISORS V, LLC, and ROGER GROH,<br><br>        Defendants. | Civil Action No. 2:12-cv-01344<br><br>Section "R"<br><br>Judge Sarah S. Vance<br>Magistrate 4 – Karen Wells Roby |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ROYAL BANK OF CANADA AND
RBC DAIN RAUSCHER'S MOTION TO DISMISS
<u>UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(b)(3)</u>**

**I.     PRELIMINARY STATEMENT**

In opposition papers that are light on law and heavy on distortion, plaintiffs fail utterly to justify why their complaint should be sustained.  Incredibly, plaintiffs resort to arguing that collateral estoppel should not apply, and limitation periods long elapsed should be tolled, because Ohle's prosecution and conviction did not really address the question whether the "1256" shelter was fraudulent.  This claim, however, is sheer mendacity, and is plainly and easily refuted by the public records of Ohle's criminal trial.

The following sections, which append relevant court documents from Ohle's trial, will lay bare plaintiffs' several attempts at distortion and, upon a proper record, show that plaintiffs' claims are collaterally estopped, that they are time-barred, and that venue in this district is improper.

**II.    ARGUMENT**

   **A.    THE DOCTRINES OF COLLATERAL ESTOPPEL AND *IN PARI DELICTO* BAR ASSERTION OF PLAINTIFFS' CLAIMS**

      **1.    The "1256" shelter fraud was "fully and fairly" litigated and "essential to the judgment" of Ohle conviction**

Plaintiffs first argue that Ohle's criminal conviction should not preclude their claims here because "the jury in Mr. Ohle's case did not even consider, nor was it given any instructions to consider RBC's 1256 tax shelter," and thus it never found that "Mr. Ohle knew the RBC's tax shelters were fraudulent."  Opp. Br. at 5, 6.  Therefore, plaintiffs contend, Ohle did not have a "full and fair" opportunity to litigate the matter of the "1256" shelter and it was not "essential to the judgment" of his conviction.  Opp. Br. at 3-6.  Plaintiffs' efforts to establish this false proposition are inept, deceptive, and easily refuted by the public record of Ohle's prosecution.

1

The clearest proof that the "1256" shelter fraud was "essential to the judgment" of Ohle's conviction comes from Ohle's own statements to the Second Circuit Court of Appeals, in the brief appealing his conviction appended here as Exhibit F.  In this brief, Ohle dedicates an entire nine-page section to arguing that the evidence at his trial was insufficient to support the jury's finding that "Ohle committed tax fraud by claiming deductions from an allegedly 'fraudulent tax shelter' known as the '1256 transaction.'"  Ex. F at 44.  This section plainly concedes that the matter of the "1256" shelter was "essential to the judgment" of his conviction, and further contains no complaint that Ohle lacked a "full and fair opportunity" to litigate the issue.

In their attempt to show otherwise, plaintiffs truncate and distort two quotes by Judge Rakoff from Ohle's criminal trial, the full transcript of which plaintiffs omit to include with their opposition papers.  Plaintiffs offer these quotes, in which Judge Rakoff states that "the legality of the tax shelters per se was not in issue," and "their legitimacy is not an issue," as proof that the legality of the "1256" shelter was not properly before the jury.  This is patently deceptive, however, as only moments later in the transcript, appended as Exhibit G, Judge Rakoff clarifies that the two quotes excerpted by plaintiffs actually referred to an entirely different transaction, called the "HOMER" shelter:[1] "Ladies and gentlemen, when I instructed you earlier about there is no claim that the tax shelter was illegal I was referring to the Homer tax shelter."  Ex. G at 225.

---

[1]  As set forth in the opening brief, the charges relating to Ohle's use and sale of the HOMER shelter were severed from the original indictment by order of Judge Sand, and thus the legality of that shelter was not at issue in Ohle's criminal trial.  Mot. to Dismiss at 3-4.  Following Ohle's conviction on the "1256" charges, the "HOMER" charges were voluntarily withdrawn by the Government and dismissed.

2

Plaintiffs next argue that Jury Instructions #10 and #11 from Ohle's criminal trial do not address the "1256" transaction, and that it was not therefore properly before the jury. Those two instructions, however, ask whether Ohle "intentionally devised a scheme to lie to the Internal Revenue Service on one or more tax returns for the purpose of impeding the IRS in its collection of taxes," and whether Ohle "intentionally attempted to evade a substantial part of his tax obligation for the relevant year, by failing to report income (Counts Two and Three) and/or by claiming improper deductions (Count Three only)," respectively. Ex. B. at 14-20. The "improper deductions" these instructions refer to were generated by the "1256" shelter, as the evidence at trial made clear. As the Second Circuit described, in its opinion affirming Ohle's conviction, this evidence relating to the "1256" shelter "convincingly demonstrate[d] an intent to defraud the United States of taxes owed." United States v. Ohle, 441 F. App'x 798, 801 (2d Cir. 2011). The fact that the instructions do not explicitly name the "1256" shelter is no evidence that its fraudulent nature was not at issue in the case.

Plaintiffs' attempt to argue otherwise now is simple prevarication, and plainly refuted by the record of the case.

### 2. Federal law does not require mutuality of estoppel

Plaintiffs next argue that to invoke collateral estoppel on the basis of Ohle's criminal conviction RBC must show "mutuality"—i.e., that defendants were Ohle's adversaries or were in privity with Ohle's adversaries in his criminal proceeding. But, as the Fifth Circuit explains in Wolfson—which plaintiffs conspicuously fail to address in their opposition—mutuality of estoppel is not required under federal law. Wolfson v. Baker, 623 F.2d 1074, 1080-81 (explaining the "modern trend toward rejection of the mutuality requirement" in Fifth Circuit and Supreme Court jurisprudence.)

3

The two Fifth Circuit cases cited by plaintiffs on this point both apply the Texas state standard, which is different from the federal rule that controls here. See Gupta v. Eastern Idaho Tumor Inst., Inc., 394 F.3d 347, 350 n.4 (5th Cir. 2004) ("Texas state rules governing collateral estoppel apply here."); McCoy v. Hernandez, 203 F.3d 371, 374 (5th Cir. 2000) ("Texas law governs the preclusive effect of the Texas criminal court's rulings in the present case."). As the second of plaintiffs' cases explains, Texas state law applied there because the judgment given preclusive effect was a Texas state criminal conviction and not, as here, a federal one. McCoy, 203 F.3d at 374 ("We must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered."). As is clear from Wolfson, where the prior judgment is a federal criminal conviction, the federal standard for collateral estoppel applies and mutuality is not required. Wolfson, 623 F.2d at 1080-81.

### 3. Collateral estoppel bars the claims of all plaintiffs

Plaintiffs additionally assert that "Defendants specifically raise [their] defense of collateral estoppel against Plaintiff Ohle only," and that collateral estoppel "was not, and can not be, raised against Plaintiffs 2002 JBO Trust No.1 and Dumaine Group LLC." This also is false, as the opening brief is clear that collateral estoppel is asserted against all plaintiffs, and not just Ohle.

Though plaintiffs claim that collateral estoppel "can not be" asserted against JBO Trust and Dumaine, they advance no supporting argument. The issue is addressed here, however, for the avoidance of doubt. The question of collateral estoppel here involves plaintiffs' knowledge of the fraud; that is, plaintiffs cannot claim to be victims of a transaction they knew was fraudulent. The allegations of plaintiffs' complaint make clear that Dumaine and the JBO Trust—legal entities— can claim no knowledge independent from that of Ohle. Specifically, the complaint pleads that the JBO Trust was created by Ohle for the purpose of

4

effecting the "1256" shelter, and Dumaine, a now-defunct limited liability company, was founded and managed by Ohle for the purpose of marketing and selling the "1256" shelter. As their creator and manager, Ohle cannot now claim that these legal entities had no knowledge, as a matter of law, of the fraud he used them to commit.

Additionally, neither the JBO Trust nor Dumaine possess legal standing to pursue any claim independent of Ohle. As the pleadings explain, because JBO Trust was a "grantor trust," the false deductions manufactured by its employment of the "1256" transaction passed through to Ohle's personal tax returns. Compl. ¶ 31; RICO Case Statement "RS" at 20-21. It was for these false deductions—on his personal returns—that Ohle was prosecuted and made to pay restitution. The JBO Trust is not alleged to have claimed false deductions itself, to have been prosecuted for them, or to have suffered any other injury independent of Ohle's own.

Further, as to Dumaine, the pleadings allege that it is "out of business." Compl. ¶ 38. Public records from the Delaware Secretary of State, appended as Exhibit H, confirm this, and state further that Dumaine's LLC status was voided and cancelled by that state for failure to pay taxes. Thus, as a matter of law under Federal Rule of Civil Procedure 17(b) and Del. Code Ann. Tit. 8 § 510, Dumaine lacks capacity and standing to sue independent of Ohle. Metropolitan Interconnect, Inc. v. Alexander & Hamilton, Inc., 2005 WL 1431670, 04-cv-2896 (E.D. La. May 26, 2005); Mather Constr. Co. v. United States, 475 F.2d 1152, 1155 (Ct. Cl. 1973) (dismissal warranted where corporation was suspended and lost capacity to sue during pendency of case.)

### B. PLAINTIFFS' CLAIMS ARE UNTIMELY
#### 1. Plaintiffs are not entitled to equitable tolling under the "discovery rule"

The opening brief established that each of plaintiffs' claims is time-barred because, first, the alleged fraud took place over nine years ago, longer than the limitation period on any of plaintiffs claims, and second, because plaintiffs are not entitled to equitable tolling under the federal "discovery rule" or the equivalent Louisiana state doctrine of *contra non valentem*. The limitation periods did not toll under these doctrines, specifically, because plaintiffs are estopped from claiming late discovery of the alleged fraud, and further because the allegations of the complaint establish that plaintiffs were on notice of the alleged fraud.

Plaintiffs argue that they should benefit from the discovery rule because none of the key events described in their complaint—the 2003 IRS "tax shelter promoter audit" that ran Dumaine out of business, the IRS's issuance of Notice 2003-81 "listing" the "1256" shelter as an impermissible tax avoidance transaction, or Ohle's indictment in 2008 for conspiracy and tax fraud—could have put plaintiffs on notice of their claims because they had nothing to do with the fact that the "1256" shelter was fraudulent. This is easily shown to be false.

Specifically, with respect to the 2003 audit and IRS Notice 2003-81, plaintiffs state: "defendants fail to mention to this Court that Plaintiffs Ohle and Dumaine Group's tax audit were not based on, nor raised the issue of Defendants' fraud." Opp. Br. at 11. But this directly contradicts plaintiffs' own pleadings, which state that these events actually exposed the "1256" shelter as fraudulent: "This Notice [2003-81] exposed the Defendants' misrepresentations that the 1256 Trades were not a 'tax shelter', while making it absolutely clear the IRS's position on the very transactions Defendants were marketing, promoting and implementing." (RS at 24.)

6

With respect to the notice provided by the 2008 indictment, as described more fully above, plaintiffs' contention that Ohle's criminal prosecution did not address the fraudulent nature of the "1256" shelter is plain prevarication. The further suggestion here—that Ohle's indictment "was superseded three times before Mr. Ohle was brought to trial" and the original lacked sufficient notice of the "1256" fraud—simply adds another layer to this falsehood. The conspiracy charge in that original indictment, appended as Exhibit I, is identical in all relevant respects to the later, severed indictment upon which Ohle was convicted. In what would become "Count 1" of the later indictment, the original indictment charges that Ohle "reported phony losses of $1,201,186 in order to eliminate the taxes on his reported income, and thereby substantially understated his true taxable income and tax due and owing for 2002." Ex. I at 49, ¶ o. This charge unmistakably alleges that the deductions Ohle claimed in 2002—generated by the "1256" transaction—were fraudulent, and plainly suffice to put plaintiffs on notice of the fraud they now allege against RBC.

### 2. The limitation periods on plaintiffs' federal claims have elapsed

RBC established, in the opening brief, that the limitation period for a private right of action under the federal securities laws is five years from the time of the violation or two years from its discovery, and additionally that plaintiffs' purported RICO claim is impermissibly duplicative of their federal securities claim under the PSLRA and is thus, at most, limited to the same period.

Plaintiffs argue that their RICO claim is valid independent of their securities claim, and should be subject to a four-year limitation period. To do so, plaintiffs attempt to distinguish the facts of Conwill v. Greenberg Traurig, L.L.P., No. 09-cv-4365, 2001 WL 1103728 (E.D. La. Mar. 22, 2011), which dismissed a RICO claim under the PSLRA upon finding that the "1256" shelter was an "investment

7

contract," and that fraud claims relating to it were therefore "actionable as securities fraud." Plaintiffs do not dispute, however, that the Conwill case involved the identical "1256" shelter that is at issue in this case, sold to the Conwill plaintiff by Ohle himself. As such, plaintiffs' efforts to distinguish this case are mere quibbling. And, in any event, a valid RICO claim limited by a period of four years would still be untimely.

### 3. The limitation periods on plaintiffs' state claims have elapsed

Last, as to plaintiffs' state law claims, the opening brief established that while contract claims may exist against other defendants, no contract is alleged to have existed between any plaintiff and the RBC defendants; that plaintiffs fiduciary claim is either barred or limited to a period of one year by the "financial institution" provisions of La. R.S. § 6:1124; and that plaintiffs' remaining state law claims are limited to periods of one, two or three years and are thus untimely. Plaintiffs object to these arguments only with respect to their claims for breach of contract, breach of fiduciary duty, and civil fraud.

As to their contractual claim, plaintiffs cite to multiple paragraphs in their complaint containing rote allegations of a "contractual relationship" between plaintiffs and "Defendants." The point established in the opening brief, however, is that plaintiffs have failed to identify any specific contract that existed between plaintiffs and RBC, and have further failed to identify any event of breach. Mere vague allegation of a "contractual relationship," absent any specific allegation that a contract existed, what such contract required, or how it was breached, does not suffice to state a claim for breach of contract. See Stall v. State Farm Fire and Cas. Co., 995 So. 2d 670 (La. App. 4 Cir. 2008) (pleading a contractual obligation, but not the existence of a specific contract, is not sufficient to state a claim for breach of contract.)

8

As to their fiduciary claim, plaintiffs argue that such claims are subject to the ten-year prescriptive period for personal actions set forth in La. Civ. Code art. 3499. But the opening brief established that under La. R.S. § 6:1124, no fiduciary relationship will arise between a plaintiff and financial institutions like defendants unless such relationship is expressly set forth in contract, and further that even if plaintiffs were to establish the existence of such a relationship, a claim for fiduciary breach against a financial institution is nonetheless limited to a period of one year under the same section. Holmgard v. First Nat'l Bank of Commerce, 687 So.2d 583, 587-89 (La. App. 4 Cir. 1997); cf. Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc., 56 F. Supp. 2d 694, 702-703 (E.D. La. 1999). Plaintiffs' opposition brief nowhere addresses these arguments or disputes that section 6:1124 applies here, and therefore concedes the point.

As to plaintiffs' claim for "civil fraud," the case law is clear that such claims are delictual and subject to the one-year prescriptive period of La. Civ. Code art. 3492. See Shermohmad v. Ebrahimi, 945 So.2d 119, 122 (La. App. 5 Cir. 2006); Aetna Cas. & Surety Co. v. Stewart Constr. Co., 780 So.2d 1253, 1256 (La. App. 5 Cir. 2001). Although plaintiffs state that claims for "intentional" fraud should be subject to a ten-year period, they offer no authority for this assertion.[2]

---

[2] Plaintiffs' argument is likely a mistaken reference to the rule for fiduciary breach, where claims for "intentional" or "fraudulent" breach are personal, and generally subject to a 10-year prescriptive period, while claims for negligent breach are merely delictual. See, e.g., Young v. Adolph, 821 So.2d 101, 106 (La. App. 5 Cir. 2002). This distinction does not apply to simple fraud claims, however, and, as discussed above, plaintiffs fiduciary claims are limited here by La. R.S. § 6:1124.

9

### C.     **IMPROPER VENUE WARRANTS DISMISSAL**

As established in the opening brief, venue is improper because Judge Rakoff of the Southern District of New York expressly retained jurisdiction over the forfeiture order in Ohle's criminal case, which plaintiffs' complaint improperly attacks. Plaintiffs' sole argument to the contrary is that the forfeiture order addressed only Count 1 of Ohle's indictment, and, according to plaintiffs, "Count 1 had nothing to do with RBC's 1256 tax shelter." Plaintiffs insist that "they are confident that after Defendants read the Forfeiture Order more carefully that they will withdraw this argument before this Court."

While plaintiffs are correct that the Forfeiture Order only addresses penalties related to Count 1 of Ohle's indictment, their argument that Count 1 of the indictment "had nothing to do" with Ohle's abuse of the "1256" transaction is, again, simply false. Count 1 addressed Ohle's broad conspiracy to defraud the United States of taxes owed, and this necessarily included Ohle's attempt to claim fraudulent deductions resulting from the "1256" transaction. Once again, the lie of plaintiffs' argument is exposed by Ohle's own statements in his brief to the Second Circuit Court of Appeals, which concedes, in the paragraph introducing the nine-page section devoted to the "1256" fraud, that "the 1256 transaction was also part of the allegations of a conspiracy to defraud the IRS in Count One." Ex. F at 44.

As plaintiffs do not dispute that Judge Rakoff retained exclusive jurisdiction over the Forfeiture Order, and it has been established here that the claims in this case improperly attack that order, plaintiffs' decision to file in this district was clearly erroneous and warrants dismissal under Rule 12(b)(3).

## III. CONCLUSION

For all the foregoing reasons, Defendants Royal Bank of Canada and RBC Dain Rauscher respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

    Respectfully submitted,

/s/ Edward J. Castaing, Jr.
Edward J. Castaing, Jr. (#4022)
Edward J. Lilly (#8571)
CRULL, CASTAING, & LILLY
Pan-American Life Center, Suite 2323
601 Poydras Street
New Orleans, LA 70130
(504) 581-7700

*Attorneys for Royal Bank of Canada and RBC Dain Rauscher*

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
David C. Esseks
Brian A. de Haan
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6300

*Attorneys for Royal Bank of Canada and RBC Dain Rauscher*