UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2002 JBO TRUST NO. 1, JOHN          CIVIL ACTION
BREWSTER OHLE III, DUMAINE
GROUP LLC


VERSUS                               NO: 12-1344


ROYAL BANK OF CANADA ET AL.          SECTION: R


## ORDER AND REASONS

Before the Court is the motion to dismiss of defendants Royal Bank of Canada and RBC Dain Rauscher Inc.[1] Also before the Court is the motion to dismiss of John Kruse and Mark Love, who join RBC's motion and submit additional grounds for dismissal.[2] Because plaintiffs have failed to state claims on which relief can be granted, the Court GRANTS defendants' motions.


## I.   BACKGROUND

This dispute arises out of financial transactions set up by plaintiff John Brewster Ohle III and defendants Royal Bank of Canada (RBC), RBC Dain Rauscher Inc., Mark Love, John Kruse, and others. In February 2002, Ohle formed the limited liability company Dumaine Group LLC, which began discussions with RBC about an investment structure RBC had designed.[3] RBC employee John

---

[1]    R. Doc. 21.

[2]    R. Doc. 32.

[3]    R. Doc. 1 at 3.

Kruse described a tax-advantaged investment in which clients would make a small investment in a portfolio structured to exploit the price movement of foreign currencies.[4] Plaintiffs allege that Kruse provided them with RBC materials indicating that the investments would produce a sizeable return, as well as a proper tax deduction.[5] Mark Love, an employee of RBC's subsidiary Dain Rauscher, assisted in the marketing and design of the RBC transaction.[6] Upon the recommendation of Dumaine and Ohle, several entities entered into the RBC transaction on December 19, 2002, including the 2002 JBO Trust No. 1, which was established in 2002 for the benefit of Ohle's children.[7] Ohle reported all income or losses from the JBO Trust on his personal income returns in 2002.[8]

In April 2003, the Internal Revenue Service (IRS) issued Information Disclosure Requests to Dumaine regarding its activities with the RBC investment structure.[9] In December 2003, the IRS issued the following notice:

---

[4]    R. Doc. 1.

[5]    *Id.* at 4.

[6]    *Id.*

[7]    *Id.* at 5.

[8]    *Id.*

[9]    *Id.* at 6.

2

> The Internal Revenue Service and the Treasury Department are aware of a type of transaction, described below, in which a taxpayer claims a loss upon the assignment of a section 1256 contract to a charity but fails to report the recognition of gain when the taxpayer's obligation under an offsetting non-section 1256 contract terminates. This notice alerts taxpayers and their representatives that these transactions are tax avoidance transactions.[10]

Plaintiffs state that, pursuant to the notice, Ohle disclosed JBO Trust's involvement in the RBC investment transaction, which fell under the section 1256 contracts identified in the IRS notice. Plaintiffs claim that Ohle was unaware that his involvement in the RBC investments was subject to a criminal complaint until November 13, 2008, when he was indicted.

In 2010, plaintiff was convicted of conspiracy to defraud an agency of the United States, specifically the IRS, and two counts of attempted tax evasion. His conviction was affirmed by the Second Circuit Court of Appeals on October 20, 2011. *See United States v. Ohle*, 441 Fed. Appx. 798 (2d Cir. 2011). On May 24, 2012, Ohle, along with 2002 JBO Trust No. 1 and the Dumaine Group, filed suit in this Court against defendants, claiming that they set up fraudulent financial schemes that plaintiffs did not know were illegal until defendants Kruse and Love testified against Ohle at his trial. Plaintiffs allege violations of the Racketeer Influenced and Corrupt Organizations (RICO) statute, federal and Louisiana securities law, Louisiana Unfair Trade

---

[10]    R. Doc. 1 at 6.

Practices Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as civil fraud, civil conspiracy, unjust enrichment, and breach of contract and fiduciary duty under Louisiana law.[11]

Defendants RBC and RBC Dain Rauscher filed a motion to dismiss on the grounds that plaintiffs' claims are collaterally estopped and/or barred by the doctrine of *in pari delicto* due to Ohle's criminal conviction, are time-barred, and that venue is improper.[12] Defendants Kruse and Love also filed a motion to dismiss in which they join RBC's motion. In addition, they argue that plaintiffs' complaint fails to assert facts demonstrating that the Court may exercise personal jurisdiction over defendants and that plaintiffs' cause of action under RICO is barred under the Private Securities Litigation Reform Act.[13]

## II.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Standard

When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). The allegations of the

---

[11]     R. Doc. 1.

[12]     R. Doc. 21.

[13]     R. Doc. 32.

4

complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of plaintiffs. *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir. 1985). In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of ... recognized [discovery] methods." *Id.*

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson,* 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute, La.Rev.Stat. § 13:3201, *et seq.,* extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 336 (5th Cir. 1999)(citing La. Rev. Stat. §13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and

5

substantial justice." *Latshaw,* 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wa.,* 326 U.S. 310, 316 (1945)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994). General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in "systematic and continuous" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9 (1984); *Wilson,* 20 F.3d at 647. Contacts between a defendant and the forum state must be "extensive" to satisfy the "systematic and continuous" test. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.,* 249 F.3d 413, 419 (5th Cir. 2001). *See also Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S.Ct. 2846, 2853–54 (2011)("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or related to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 867 (5th Cir. 2001); *Helicopteros,*

6

466 U.S. at 414 n. 8. The minimum contacts showing may be
established by actions, or even just a single act, by the
nonresident defendant who "purposefully avails itself of the
privilege of conducting activities within the forum state, thus
invoking the benefits and protections of its laws." *Burger King
Corp. V. Rudzewicz,* 471 U.S. 462, 475 (1985). Purposeful
availment "must be such that the defendant 'should reasonably
anticipate being haled into court' in the forum state." *Ruston
Gas Turbines Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir.
1993)(citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S.
286, 297 (1980)). Whether the Court has specific jurisdiction
over defendants John Kruse and Mark Love is at issue here,
because plaintiffs do not argue that general jurisdiction exists.

**B. Discussion**

Plaintiffs contend that because Kruse and Love engaged in
transactions with and provided materials to 2002 JBO Trust No. 1,
a Louisiana trust, they purposely directed their activities
towards the state. Further, plaintiffs argue that their alleged
injuries were felt in Louisiana and arise out of or relate to the
actions taken by Love in designing and marketing RBC's 1256 tax
shelter and Kruse's design, marketing, implementation, and
documentation of the tax shelter. Plaintiffs do not allege that
either defendant traveled to Louisiana to conduct the business at
issue here.

7

In examining an individual's relevant contacts with a forum, courts consider whether a party directed specific acts towards a forum and assess the foreseeable effects of an intentional tort. *See Allred v. Moore & Peterson*, 117 F.3d 278, 286–87 (5th Cir. 1997). That a party merely contracts with a resident of the forum state does not satisfy the requirement of minimum contacts. *See Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir. 1986). But, the Fifth Circuit Court of Appeals has distinguished communications that solicit business or negotiate contracts from communications "the actual content of [which] . . . gives rise to intentional tort causes of action." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). In *Wien Air*, the plaintiff sued an attorney for fraud, fraudulent inducement, breach of contract, and breach of fiduciary duties. *Id*. at 211. The attorney lived in Germany but had sent letters and faxes and made phone calls to Texas, all of which allegedly contained fraudulent misrepresentations. *Id.* at 212. The court held that these communications constituted purposeful availment of the forum such that the defendant had the requisite minimum contacts with Texas. *Id*. at 213.

Similarly, plaintiffs here contend that the allegedly fraudulent representations made by Kruse and Love were specific acts directed towards Louisiana. The complaint states that Kruse and Love made representations to JBO Trust and the other

plaintiffs about the compliance of the RBC transaction with tax regulations.[14] Plaintiffs also allege that Kruse introduced JBO Trust to the entities acting as counterparties to the RBC transaction, with whom Kruse and Love had allegedly formed a secret, fraudulent agreement.[15]

That JBO Trust is domiciled in Louisiana does not necessarily demonstrate that representations made by defendants, whether by mail, email, or phone, were actually received in Louisiana. *Cf. Wien Air Alaska, Inc.*, 195 F.3d at 212 (individuals in Texas received defendant's letters, faxes and phone calls). Nevertheless, the Court finds that plaintiffs have put forth a prima facie case that defendants' actions in sending allegedly fraudulent materials to a trust based in Louisiana constituted purposeful availment of the forum. By allegedly inducing JBO Trust to enter into the RBC transactions through their representations, defendants could reasonably expect to be haled into court in Louisiana. *See, e.g., Shane Matherne Enter., Inc. v. Sokolic*, No. 04-2140, 2006 WL 622821, at *5 (E.D. La. Mar. 6, 2006) (defendant's fraudulent transfer of domain name ownership was act aimed at Louisiana corporation that conferred specific jurisdiction, despite defendant's lack of other contacts with Louisiana).

---

[14]    R. Doc. 1 at 5.

[15]    *Id.*

9

Moreover, according to the facts alleged in the complaint, plaintiffs' causes of action arise directly out of the representations made by defendants regarding the nature of the RBC transactions. Defendants' argument that the activities at issue took place in New York, not Louisiana, is without merit. Although the secret agreements allegedly formed among defendants and the investments related to the RBC transactions may have occurred in New York, plaintiffs' complaint identifies the representations that defendants made in materials prepared and sent to plaintiffs as integral components of their claims.

Because plaintiffs have made a prima facie showing that defendants had minimum contacts with Louisiana and that plaintiffs' causes of action arise from these contacts, defendants bear the burden of showing that the Court's exercise of jurisdiction would be unfair or unreasonable. *See Nuovo Pignone, SpA v. STORMAN ASIA M/V,* 310 F.3d 374 (5th Cir. 2002). The Court finds that defendants have not demonstrated that the Court's jurisdiction would offend the notions of fair play and substantial justice. By allegedly soliciting clients across the country, defendants took on the risk that they would have to litigate in different forums, and defendants point to no particular hardship that would result from the Court's exercise of jurisdiction. *See, e.g., Burger King Corp*., 471 U.S. at 477. Accordingly, the Court finds that it has personal jurisdiction

over defendants Love and Kruse.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    Standard

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1960 (2009)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal,* 129 S.Ct. at 1949.

### B.    Collateral Estoppel

The Court may dismiss a claim under Rule 12(b)(6) if it appears from the face of the complaint that the claim is barred by collateral estoppel. *See, e.g., Cade v. U.S. Postal Serv.,* 45

F. App'x 323 (5th Cir. 2002). Collateral estoppel bars a party
from relitigating issues of fact or law that were actually
determined in a prior action and were necessary to the court's
judgment. *Sidag Aktiengesellschaft v. Smoked Foods Products Co.,*
776 F.2d 1270 (5th Cir. 1985). Federal law applies in determining
the preclusive effect of a federal judgment in another federal
court. *Duffy & McGovern Accommodation Services v. QCI,* 448 F.3d
825, 829 n.16 (5th Cir. 2006). A party asserting collateral
estoppel under federal law must show the following: "(1) the
identical issue was previously adjudicated; (2) the issue was
actually litigated; and (3) the previous determination was
necessary to the decision." *Pace v. Bogalusa City Sch. Bd.,* 403
F.3d 272, 290 (5th Cir. 2005), *cert. denied sub nom. Louisiana
State Bd. of Elem. and Sec. Educ. v. Pace,* 546 U.S. 933 (2005).
The parties in the subsequent suit need not be identical to those
in the earlier suit, but the party against whom collateral
estoppel is applied generally must have been a party or in
privity with a party in the earlier litigation. *See Vines v.
Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005).

In arguing that collateral estoppel bars all of plaintiffs'
claims, defendants point to court materials and judgments from
Ohle's criminal conviction. *See Davis v. Bayless*, 70 F.3d 367,
372 n.3 (5th Cir. 1995) ("Federal courts are permitted to refer
to matters of public record when deciding a 12(b)(6) motion to

dismiss."). Defendants contend that plaintiffs' claims are based on the factual assertion that Ohle did not know that RBC's "1256" shelters were fraudulent and that this issue has already been litigated.

Ohle was convicted of conspiracies involving another type of tax shelter, called HOMER, and a scheme to defraud the IRS, as well as income tax evasion. Defendants argue that Ohle's knowledge that the RBC "1256" shelter was fraudulent was made clear through the jury instructions given for the tax evasion charge and the Second Circuit's treatment of Ohle's appeal. The jury was instructed that to convict Ohle of tax evasion, it must find that he acted willfully, in that he "specifically intended to defeat or evade the payment of taxes that he knew he owed."[16] Although the jury charges did not specifically identify the "1254" tax shelters, in appealing his conviction, Ohle argued that he did not have fair notice that his conduct in entering into the "1256" tax shelter transaction could be considered a willful attempt to evade federal income taxes. *See Ohle*, 441 Fed. Appx. at 801. In rejecting Ohle's arguments on the merits, the Second Circuit identified trial evidence showing Ohle's knowledge of the nature of the "1256" investment vehicle. *Id.* The Second Circuit described the evidence as "convincingly demonstrat[ing] an intent to defraud the United States of taxes owed." *Id.*

---

[16]    R. Doc. 21-4 (Jury Instructions).

The Court finds that the issue of Ohle's intent and notice in entering into the "1256" scheme was litigated during his criminal trial and that the determination was necessary to the judgment. *See Pace,* 403 F.3d at 290. Therefore, the Court finds that Ohle is collaterally estopped from asserting that he was unaware that the RBC "1256" tax structure constituted tax evasion. Nevertheless, the Court finds that defendants have failed to demonstrate that plaintiffs' complaint is barred as a result.

Defendants cite the Fifth Circuit decision in *Wolfson v. Baker* in support of their contention that plaintiffs' claims should be dismissed in their entirety. In *Wolfson*, the Fifth Circuit affirmed the district court's application of nonmutual collateral estoppel, which kept the plaintiff from asserting in a civil suit filed after his criminal conviction that he did not know the relevant securities regulations at the time of the transaction at issue. 623 F.2d 1074 (5th Cir. 1980). The plaintiff's criminal liability depended on a finding that his failure to file documents with the Securities Exchange Commission was a willful act, *id.* at 1078, similar to the requirement in Ohle's criminal trial that he be found to have acted willfully in evading taxes through the "1256" scheme.  Indeed, the holding in *Wolfson* supports the Court's determination that Ohle's intent to evade taxes has been established and may not be relitigated in a

14

subsequent civil suit. But, the district court in *Wolfson* followed a two-step process in holding that collateral estoppel barred the plaintiff's claims. *See Wolfson v. Baker,* 444 F. Supp. 1124 (M.D. Fla. 1978) (granting summary judgment on two counts on the basis of collateral estoppel). The court first established that no factual questions remained as to Wolfson's knowledge and then considered the effect of this finding on the merits of each of his claims. *Id.* at 1131-36.

Although defendants' arguments here concern the face of plaintiffs' complaint rather than the merits, defendants cannot contend that collateral estoppel bars all of plaintiffs' claims without any discussion of the elements of those claims and why they cannot be maintained if plaintiffs may not litigate the issue discussed above. Plaintiffs' complaint contains seven causes of action, which have diverse elements that may or may not be affected by the Court's finding that Ohle cannot argue his lack of knowledge as to the fraudulent nature of the RBC transaction. With the exception of plaintiffs' claim for breach of fiduciary duty, discussed *infra*, it is not apparent how this bar renders plaintiffs' claims facially implausible. *See Iqbal,* 129 S.Ct. at 1960. Moreover, defendants' contention that the doctrine of *in pari delicto* also applies and thus Ohle's own wrongdoing bars recovery on his claims is too broad and insufficiently supported for the Court to conclude on this basis

15

that plaintiffs have not stated a claim. Accordingly, the Court finds that plaintiffs' complaint should not be dismissed on its face under the doctrines of collateral estoppel or *in pari delicto*.

## C.  Prescription

Defendants also argue that plaintiffs' claims are time-barred. A complaint may be dismissed under Rule 12(b)(6) if the pleadings demonstrate that the claim has prescribed. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The parties do not dispute that the RBC "1256" tax shelter transaction at issue was implemented on December 19, 2002. To determine whether dismissal of plaintiffs' claims on prescription grounds is appropriate, the Court shall consider the statute of limitations for each claim.

### 1. Federal Claims

Under RICO, a four-year limitations period applies, which begins to run at the time that a plaintiff knew or should have known of his injury. *Rotella v. Wood,* 528 U.S. 549, 553-54 (2000). The limitations period under federal securities law is five years from the time of the violation or two years from its discovery. 28 U.S.C. § 1658(b). The Court finds that the face of the complaint makes clear that both claims have prescribed.[17] The

_____

[17]     Because the Court finds that plaintiffs' RICO claims are time-barred, it need not address the issue of whether the claim is precluded by the Private Securities Litigation Reform

RBC transaction was executed in 2002, and thus the allegedly fraudulent representations made by defendants concerning the tax shelter must have occurred around this time as well.

Moreover, plaintiffs cannot argue that they did not discover defendants' fraud until Ohle's trial. As previously stated, the issue of Ohle's awareness that the "1256" investment was a vehicle with which to evade taxes has already been decided and may not be relitigated. Thus, Ohle cannot argue that, at the time of the transaction, he was unaware of the nature of the RBC tax shelter due to fraudulent representations by defendants. Further, it is unlikely that the Dumaine Group and JBO Trust, entities integrally linked to Ohle, did not share his knowledge of the fraudulence of the "1256" tax shelters. In any event, the Court finds that the notice issued in December 2003 by the IRS, stating that "1256" transactions constituted tax avoidance measures, put the Dumaine Group and JBO Trust on notice that the transactions were of a different nature than was allegedly advertised by defendants.[18] Further, the complaint states that after the IRS issued Information Disclosure Requests to Dumaine in April 2003 regarding its activities with the RBC transactions, Dumaine hired representation to comply with the IRS requests.[19] Plaintiffs

_____

Act.

[18]    *See* R. Doc. 1 at 6.

[19]    R. Doc. 1 at 6.

17

state that a year later, after paying $500,000 in legal fees and
a tax shelter promoter penalty, Dumaine Group was put out of
business.[20] Thus, it is clear that plaintiffs knew of their
injury by 2004 at the latest and that their federal claims have
prescribed.

### 2. State statutory claims

The Louisiana Unfair Trade Practices Act (LUTPA) has a one-
year limitations period that runs from the time of the
transaction giving rise to the cause of action. La. R.S. §
51:1409(E). LUTPA's limitations period is preemptive and thus is
not subject to interruption or suspension. *See Glod v. Baker,* 899
So. 2d 642 (La. Ct. App. 2005). Given that the transaction at
issue occurred in December 2002, it is clear from the face of the
complaint that the claim has prescribed.

So too have plaintiffs' claim of civil liability from the
sale of securities under Louisiana law, which is subject to a
two-year prescriptive period, and plaintiffs' claim under the
Illinois Consumer Fraud and Deceptive Business Practices Act,
which must be brought within three years. La. R.S. §51:714(C);
815 Ill. Comp. Stat. 505/10a. Plaintiffs contend that they are
entitled to equitable tolling under the federal "discovery" rule
or the Louisiana doctrine of *contra non valentem*, since
plaintiffs did not know about defendants' fraud until Ohle's

---

[20]    *Id.*

criminal trial. Under these doctrines, prescription may be suspended or a statute of limitation tolled if a litigant was unable to bring a claim for reasons outside of his control. *See, e.g., Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002).  As previously discussed, both Ohle's criminal conviction and the facts pleaded in the complaint bar plaintiffs from claiming that they did not know of the nature of the RBC tax shelter until Ohle's trial. Accordingly, the tolling or suspension of the limitations period under the doctrine of *contra non valentem* is unavailable for plaintiffs' claims that have clearly prescribed.

The Court thus finds that plaintiffs' claims under LUTPA, Louisiana securities law, and the Illinois Consumer Fraud Act must be dismissed.

*3. Civil fraud, civil conspiracy, and unjust enrichment*

Plaintiffs' complaint also contains claims of civil fraud, civil conspiracy, and unjust enrichment. The limitations period for these claims depends on whether they are considered delictual and arise from a general duty owed to all individuals or are contractual and "flow from the breach of a special obligation contractually assumed." *Carriere v. Jackson Hewitt Tax Serv. Inc.*, 750 F. Supp. 2d 694, 704 (E.D. La. 2010). Under Louisiana law, delictual actions are subject to a one-year prescriptive period, La. Civ. Code. art. 3492, whereas contractual claims have

19

a ten-year prescriptive period, La. Civ. Code. art. 3499. Louisiana courts look to the nature of the duty breached to determine whether a cause of action is contractual or delictual. *Roger v. Dufrene*, 613 So.2d 947, 948 (La. 1993). Even when a contract exists, if an action is grounded in tort, courts generally apply the delictual prescription. *Gallant Investments, Ltd. v. Illinois Cent. R. Co.*, 7 So.3d 12, 17 (La. Ct. App. 2009). Further, "that the circumstances arose in the context of a contractual relationship does not make the action contractual." *Id*. Rather, a plaintiff must put forth factual allegations supporting the characterization of the action as contractual. *Id.*

In their complaint, plaintiffs assert that defendants provided investment materials to plaintiffs and made representations about the nature of the RBC transaction and the resulting tax implications.[21] Plaintiffs state that they entered into investment contracts with defendant Montgomery Global Advisors V, LLC, which had an agreement to breach the contracts with the RBC defendants.[22] Plaintiffs further assert that RBC and Montgomery were plaintiffs' fiduciaries.[23] The Court addresses these alleged contracts below, but even assuming a contractual

___

[21]   R. Doc. 1 at 4-8.

[22]   R. Doc. 1 at 23-24. Montgomery did not join in the motions to dismiss and was dismissed from the case for plaintiffs' failure to prosecute.

[23]   R. Doc. 1 at 24.

relationship existed between the parties, the Court finds that
plaintiffs' fraud and conspiracy actions are grounded in tort.

Plaintiffs allege that defendants made false and misleading
representations and formed a conspiracy to commit unlawful
acts.[24] Such actions are delictual, rather than contractual, as
plaintiffs do not present facts that describe the way in which
these actions violated the terms of the contracts. Rather,
plaintiffs' complaint faults defendants for acting dishonestly in
inducing plaintiffs to enter into the contracts and thus
identifies delictual claims for which a one-year prescriptive
period applies. *See Henry v. Cisco Sys., Inc.*, 106 F. App'x 235,
239 (5th Cir. 2004)(plaintiff's fraudulent inducement claim had
prescriptive period of one-year from the time injury or damage
was sustained).

Moreover, an unjust enrichment remedy is "only applicable to
fill a gap in the law where no express remedy is provided."
*Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 245, 246 (La.
2010) (per curiam) (claimant's delictual cause of action
precluded remedy of unjust enrichment). In stating a claim for
unjust enrichment, plaintiffs incorporate their allegations from
the first four causes of action and thereby demonstrate that
other, more specific causes of action are available. That the
other claims are time-barred has no bearing on the Court's

---

[24]     R. Doc. 1 at 18-20.

dismissal of the unjust enrichment claim, for "the mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* at 246. The Court thus finds that plaintiffs, in alleging civil fraud, civil conspiracy, and unjust enrichment, have failed to state a claim on which relief may be granted.

### D.   Failure to Plead Elements of Claim

Lastly, defendants contend that plaintiffs' remaining claims for breach of contract and fiduciary duty must also be dismissed. Regarding plaintiffs' claim for breach of contract, defendants assert that plaintiffs have failed to identify a specific contract that existed or the actions that constituted a breach of contract. Plaintiffs' complaint identifies defendant Montgomery, not the RBC defendants, as the counterparty with which plaintiffs contracted.[25] Regarding the RBC defendants, plaintiffs allege that they had an agreement with Montgomery to breach the investment contracts and that the RBC defendants provided fraudulent investment contracts.[26]

Under Louisiana law, "a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code art. 1906. Plaintiffs state that a

---

[25]   R. Doc. 1 at 23.

[26]   *Id.* at 23-24.

22

contract existed among the parties but do not provide any facts that would allow the Court to assess the obligations imposed on defendants by the contract and to determine whether plaintiffs have successfully pleaded facts demonstrating that defendants breached the contract terms. Plaintiffs assert that defendants made false statements, provided false investment contracts, and engaged in an undisclosed kickback scheme.[27] But, any contractual terms agreed upon by the parties remain unidentified. Thus, plaintiffs' allegations discuss only defendants' alleged violations of a general duty to act lawfully, not contractual duties owed by defendants. Consequently, even accepting as true plaintiffs' factual allegations, the Court finds that plaintiffs have not set forth a facially plausible claim for breach of contract. *See Iqbal*, 129 S.Ct. at 1949.

Similarly, the Court finds that plaintiffs have failed to plead the elements of a claim for breach of fiduciary duty. Under Louisiana law, the fiduciary duty of a financial institution or its officer or employee to customers or third parties must be established by a written agency or trust agreement under which the financial institution "specifically agrees to act and perform in the capacity of a fiduciary." La. Rev. Stat. Ann. § 6:1124. A financial institution is defined as a "bank, savings and loan association, savings bank, or credit union authorized to transact

---

[27]     *Id.* at 24.

business in [Louisiana]." La. Rev. Stat. Ann. 6:1121. Thus, RBC, as the Royal Bank of Canada, and its employee John Kruse constitute a financial institution and its employee, against whom a fiduciary duty cannot be implied.  Plaintiffs have not pointed to a written agency or trust agreement demonstrating RBC's or Kruse's agreement to act as fiduciary. Moreover, under § 6:1124, claims for breach of fiduciary duty by a financial institution or its employee must be brought within one year of the first breach. Therefore, plaintiffs' claims against RBC and Kruse are both inadequately pleaded and prescribed.

Based on the record, the Court cannot determine whether RBC's subsidiary, RBC Dain Rauscher, qualifies as a financial institution under § 6:1121. Nevertheless, the Court finds that plaintiffs have not stated a claim for breach of fiduciary duty against RBC Dain Rauscher or its employee, Mark Love. The existence of a fiduciary duty depends on a "special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Scheffler v. Adams & Reese, LLP*, 950 So.2d 641, 648 (La. 2007). In fact, the mere execution of a contract does not impose fiduciary duties on the parties. *See Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1330 (5th Cir. 1994). Plaintiffs have not pleaded facts demonstrating that defendants RBC Dain Rauscher and Love assumed any fiduciary obligations towards

24

plaintiffs. The complaint states that plaintiffs entered into a transaction set up by defendants, but it provides no detail as to specific fiduciary relationships that the parties developed. Nor does the complaint detail the duties that defendants assumed as plaintiffs' alleged fiduciaries or suggest the manner in which defendants violated any such duties.

Instead, plaintiffs allege that Love misrepresented the nature of the RBC transaction and that RBC Dain Rauscher formed a kickback scheme with RBC and Montgomery Global. But such allegations alone support a claim of fraud, which the Court has already addressed, not a claim for breach of fiduciary duty. Further, in contending that defendants' misrepresentations constituted a breach of fiduciary duty, plaintiffs must necessarily show that they were duped or defrauded by defendants. But, the Court has held that Ohle is estopped from litigating that he was unaware of the nature of the RBC transaction, which estoppel applies to the privies on whose behalf he acted. Therefore, plaintiffs cannot allege that they formed with defendants a special relationship of confidence or trust that was broken by the RBC transaction's true nature as a tax shelter. Accordingly, the Court finds that plaintiffs have failed to plead the elements of a claim for breach of fiduciary duty.

**IV.  CONCLUSION**

    For the foregoing reasons, the Court GRANTS defendants' motions to dismiss for failure to state a claim and orders plaintiffs' claims dismissed.

    New Orleans, Louisiana, this 8th day of March, 2013.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE